**William F. ARIVELLA, Lucien F. Carrier, Elnora M. Curran, William K. Dehart, Jr., Sebastian Distefano, Sharon C. Donovan, Shirley Easter, Albert R. Gauvin, William Higgins, Charlotte R. Johnston, Shay Kennedy, Kent D. Klueber, Lucille P. Lacroix, Beverly J.**

Leveille, Della Marrone, Ida R. McCarthy, Maria Murphy, Manual A. Neves, Lewis G. Parham, Joanne R. Payson, Patricia A. Picard, Dorothy Porter, Carol A. Ross, Marguerite Santo, Administratrix of the Estate of Michael D. Santo, Roberta A. Simmons, Leonard Speigel, and Theresa Staples, Plaintiff

v.

LUCENT TECHNOLOGIES, INC., Lucent Technologies Pension Plan, Lucent Technologies Inc. Life Insurance Plans, Lucent Technologies Inc. Long Term Care Insurance Plan, Lucent Technologies Inc. Medical Expense Plan, Lucent Technologies Inc. Dental Expense Plan, and Lucent Technologies Long Term Savings and Security Plan, Defendants.

Civil Action No. 08–cv–10398–RCL.

United States District Court,
D. Massachusetts.

June 8, 2009.

168

Terence H. McGuire, John Houston Pope, Evan J. Spelfogel, Epstein, Becker & Green, PC, New York, NY, for Defendants.

Dale James Morgado, Thomas G. Moukawsher, Ian O. Smith, Moukawsher & Walsh, LLC, Hartford, CT, Mala M. Rafik, Rosenfeld & Rafik, PC, Boston, MA, for Plaintiff.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

The above-listed plaintiffs ("plaintiffs"), all former employees of defendant Lucent Technologies, Inc., who were also members of the Communications Workers of America union ("CWA" or "Union"), sued the

above-listed defendants ("Lucent") on March 11, 2008, alleging breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA") §§ 404 and 502(a)(3) (Count I), breach of ERISA § 502(a)(1)(B) (Count II), and common law fraud and misrepresentation (Count III). In either April or July 2001, each of the plaintiffs accepted a benefits package from Lucent in exchange for voluntarily ceasing their employment with the company. The plaintiffs claim, however, that at the time they agreed voluntarily to terminate their employment, Lucent and the Union failed to disclose the contents of a prior agreement whereby Union-member Lucent employees involuntarily laid off would be entitled to a significantly more generous benefits package. Each of the plaintiffs in this case assert that had they been aware of the potential to receive more generous benefits, they would not have accepted the voluntary termination offer.

The plaintiffs in the instant case only filed suit in their individual capacities after Judge Reginald C. Lindsay denied class certification and the instant plaintiffs' motion to intervene in a different case, *Fici v. Lucent Technologies*, Civil Action No. 02–10536–RCL (hereinafter *Fici*). The *Fici* class representatives brought suit on behalf of all Union-member Lucent employees who accepted the April and July offers of voluntary separation, including all of the plaintiffs in the case at bar.

Lucent now moves to dismiss the individual plaintiffs' claims, arguing that their suits are barred by the relevant three-year statute of limitations or six-year statute of repose in ERISA § 413. Because the durational limitations in section 413 were tolled during the pendency of the *Fici*

class action pursuant to the Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Court DENIES Lucent's motion to dismiss the plaintiffs' ERISA claims (Counts I and II) and GRANTS Lucent's motion to dismiss the misrepresentation and fraud claims (Count III).

## I. FACTUAL RECORD AND PROCEDURAL HISTORY

Lucent operated a manufacturing facility, the Merrimack Valley Works ("Merrimack") in North Andover, Massachusetts, which is now closed. (Pls.' Am. Cmplt. ("Cmplt.") ¶ 37, Doc. No. 6.)[1] As of January 2001, more than 5,000 individuals worked at the plant. (*Id.*) Many of the workers employed at the plant and all of the plaintiffs in this case were members of a union, the CWA. (*Id.* ¶¶ 3–29.)

In April 2000 Lucent announced that it was seeking to outsource many of the manufacturing functions undertaken at Merrimack, and by early–2001, it was commonly known among the workforce that Lucent intended to sell or close Merrimack. (*Id.* ¶ 39.) To facilitate this course of action, in early–2001, Lucent management engaged the CWA in negotiations to modify the Collective Bargaining Agreement. In particular, the parties focused on the provisions of the Collective Bargaining Agreement that comprised the Lucent Career Transition Option Program ("LCTOP"), which governed the amount of money Union employees could receive if they accepted an offer voluntarily to cease employment with Lucent.

Prior to the completion of the April 2001 negotiations, upon acceptance of a volun-

---

1. All references to filings and docket entries are from the instant case unless otherwise noted.

tary termination offer, employees could receive only "Standard LCTOP" benefits, which allowed for a maximum, lump-sum payment of $30,500 (dependent on the employee's salary and seniority). (*Id.* ¶ 42.) On April 19, 2001, the Union and Lucent formalized a Memorandum of Agreement ("April 2001 Agreement") modifying the Collective Bargaining Agreement to provide for two new levels of benefits. (*Id.* ¶ 41.) Under the April 2001 Agreement, employees who voluntarily terminated employment were entitled to "Enhanced LCTOP" benefits, which increased the maximum lump-sum payment to $40,000, and also allowed employees within one year of pension eligibility to receive a leave of absence so that their pension benefits could vest. (*Id.*) The second type of benefits, delineated in Paragraph 5 of the April 2001 Agreement ("Paragraph 5" benefits), would be available only to individuals involuntarily laid off by Lucent; Paragraph 5 benefits were undisputedly more generous than the Enhanced LCTOP benefits.[2]

### A. The April 2001 Offer

On April 2, 2001, prior to the completion of the April 2001 Agreement, Lucent informed Merrimack employees that it was going to reduce the workforce by approximately 700 CWA members, either through involuntary layoffs or voluntary separations. In accordance with this downsizing effort, Lucent explained to CWA members that they had the option to voluntarily leave the company by April 21, 2001, and receive Standard LCTOP benefits. (*Id.* ¶¶ 46–47.) On April 12, however, Lucent management informed affected employees that the deadline for accepting LCTOP would be extended until May 2, 2001. (*Id.*) As is discussed above, on April 19, Lucent and the CWA completed the April 2001 Agreement. Pursuant to the Agreement, on April 26, 2001, Lucent informed Union employees by letter that those who elected to leave the company voluntarily would be eligible for the Enhanced, as opposed to Standard, LCTOP benefits. (*Id.* ¶ 50.) The letter did not, however, explain or mention that individuals involuntarily dismissed would receive the more generous Paragraph 5 benefits. (*Id.*) Ultimately, more than 470 individuals, including the majority of plaintiffs in this case, accepted the April offer and resigned their employment by June 2001. (*Id.* ¶ 51.)

### B. The July 2001 Offer

On July 12, 2001, Lucent sent another letter to Union employees, explaining the need for additional reductions and offering Enhanced LCTOP benefits to those who chose voluntarily to cease employment by July 27, 2001. (*Id.* ¶ 52.) This letter also made no mention of the Paragraph 5 benefits that laid-off Union employees would receive. (*Id.*) Approximately 30 people, including at least one of the plaintiffs in this case, elected voluntarily to terminate their employment pursuant to the July offer.[3] (*Id.* ¶ 53.)

### C. The September 2001 Offer

On September 25, 2001, still needing to eliminate additional positions, Lucent of-

---

2. Other than the fact that Paragraph 5 benefits were more generous than Enhanced LCTOP benefits, a fact the plaintiffs allege in their complaint and that Lucent admits, the details of the Paragraph 5 benefits are immaterial to the Court's determination of the motion to dismiss.

3. The plaintiffs claim that at least one of the plaintiffs accepted the July 2001 offer, as opposed to the April 2001 offer. After a thorough review, the Court has been unable to discern any plaintiffs who accepted the July 2001 offer. As the Court discusses in detail below, whether any of the plaintiffs accepted the July 2001 offer is immaterial to the Court's determination of Lucent's motion.

fered the more generous Paragraph 5 benefits to employees who would voluntarily sever their employment with the company. Approximately 1,200 employees accepted the offer of Paragraph 5 benefits. (*Id.*) ¶ 54.

### D. *Fici v. Lucent Technologies* and the Filing of the Instant Lawsuit

The instant case is the offshoot of a prior class action lawsuit, *Fici v. Lucent Technologies, Inc.*, 02–10536–RCL (hereinafter *Fici* ). In that case, two Union-member Lucent employees, serving as class representatives, filed suit on behalf of all CWA-member Lucent employees who worked at Merrimack and who accepted either the April or July 2001 offers of Enhanced LCTOP benefits. (Second Am. Cmplt. ¶ 14, *Fici*, Doc. No. 117.) The *Fici* plaintiffs filed their initial complaint on March 22, 2002 (*Fici*, Doc. No. 1); the plaintiffs filed a first amended complaint on June 5, 2002, (*Fici*, Doc. No. 6), and finally filed their second and final amended complaint on November 4, 2004, (*Fici*, Doc. No. 117). As in the instant case, the gravamen of the *Fici* claims was that Lucent breached its fiduciary duty to CWA members by entering into the April 2001 Agreement, offering Enhanced LCTOP benefits to employees who agreed voluntarily to terminate their employment in April and July 2001, and failing to inform those same employees that individuals terminated involuntarily would be entitled to the more generous Paragraph 5 benefits. All 28 plaintiffs in the instant case met the proposed class definition in *Fici.*

The *Fici* plaintiffs moved to certify their proposed class on November 5, 2004. (*Fici*, Doc. No. 118.) After a hearing on May 16, 2005, Judge Lindsay denied the plaintiffs' motion on September 29, 2005. *Fici*, Doc. No. 135. Judge Lindsay's Memorandum and Order explained that the *Fici* plaintiffs could not satisfy Federal Rule of Civil Procedure 23(b)(2), because they sought money damages as their primary remedy, or Rule 23(b)(3), because questions affecting how individual plaintiffs would have responded to the full disclosure of the April 2001 Agreement would have predominated over questions common to the entire class. *Id.* at 15 ("[A]ssuming that the plaintiffs can meet the burden of showing the failure of Lucent to disclose the full terms of the [April 2001 Agreement], harm to each member of the class can only be determined on an employee-by-employee basis. Accordingly, individual issues predominate over common issues in this case and certification cannot be had under Rule 23(b)(3)."). The *Fici* plaintiffs then requested leave to file an interlocutory appeal of the Court's denial of their class certification motion, which the First Circuit denied on December 29, 2005. (Cmplt. ¶ 270.)

On February 8, 2007, the *Fici* plaintiffs along with the plaintiffs in the instant case, moved to amend the *Fici* second amended complaint to join the plaintiffs in the instant case as parties to the *Fici* lawsuit. (*Fici*, Doc. No. 142.) Magistrate Judge Joyce London Alexander granted the motion on July 13, 2007, *Fici*, Doc. No. 158, but Judge Lindsay sustained Lucent's objection to Magistrate Judge Alexander's recommendation and denied the motion to amend on November 29, 2007, *Fici*, Doc. No. 171.

More than three months later, on March 11, 2008, the plaintiffs in the instant case filed their complaint before this Court. (Doc. No. 1.) They filed an amended complaint on April 10, 2008. (Doc. No. 6.) Lucent filed its motion to dismiss on July 2, 2008. (Doc. Nos. 13, 14.) The Court heard oral argument on Lucent's motion on March 17, 2009.

## II. ANALYSIS

### A. Standard of Review

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1975, 167 L.Ed.2d 929 (2007); *see also Rodriguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir.2007) (to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief"). A plaintiff's " '[f]actual allegations must be enough to raise a right to relief above the speculative level[.]' " *Parker v. Hurley*, 514 F.3d 87, 95 (1st Cir.2008) (quoting *Bell Atlantic*, 127 S.Ct. at 1965 (citations omitted)). In ruling on a motion under Rule 12(b)(6), the court must accept as true all of the well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs. *Morales–Villalobos v. Garcia–Llorens*, 316 F.3d 51, 52–53 (1st Cir.2003). The court, however, must eschew reliance on "bald assertions, unsupportable conclusions, and opprobrious epithets." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir.2004) (citations and quotation marks omitted).

A motion under Rule 12(b)(6) is an appropriate mechanism for raising a statute of limitations defense, "provided that the facts establishing the defense [are] clear on the face of the plaintiff's pleadings." *Trans–Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir.2008) (citations and quotation marks omitted). "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate." *Id.*

### B. Time Limits Under ERISA for Breach of Fiduciary Duty

The plaintiffs' first amended complaint includes three causes of action: breach of fiduciary duty under ERISA § 404 and relief under ERISA § 502(a)(3) (Count I); a claim for plan benefits under ERISA § 502(a)(1)(B) (Count II); and common law fraud or misrepresentation (Count III). (Cmplt. ¶ 271–286.)[4] The essence of their complaint is that Lucent breached its duty to Union employees by offering Enhanced LCTOP benefits in April and July 2001 and failing to inform those employees who accepted the Enhanced LCTOP of the possibility of receiving the more generous Paragraph 5 benefits if they were laid off from the company.

In its motion, Lucent claims that the plaintiffs' complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because they are time barred by ERISA. ERISA § 413 provides that all claims of a fiduciary's breach must be filed before:

the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or;

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the

---

4. Because the plaintiffs have properly pled that the employment plans at issue are covered under ERISA, the Court must assume that ERISA applies to this action.

date of discovery of such breach or violation.

29 U.S.C. § 1113 (2006).

 Sections 413(1) and 413(2) present different types of durational limitations. Section 413(1), a prototypical "statute of repose," refers exclusively to the conduct of the defendant and demarcates a fixed period of time within which a plaintiff can file a complaint. *See Black's Law Dictionary* 1423 (7th Ed. 1999) (defining a "statute of repose" as "[a] statute that bars a suit a fixed number of years after the defendant acts in some way . . ., even if this period ends before the plaintiff has suffered an injury"). In contrast, section 413(2) is a standard "statute of limitations," requiring that a plaintiff file suit within a certain period of time after he or she becomes aware of an injury suffered. *Id.* at 1422 (defining "statute of limitations" as "[a] statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)").

 Absent tolling of both section 413(1) and 413(2)'s limitations, all of the plaintiffs' claims in this action would be time barred. According to the complaint, each of the plaintiffs accepted either the April 2001 offer (which had an acceptance deadline of May 2, 2001) or the July 2001 offer (which had a deadline of July 27, 2001). Accordingly, the six-year limitation under section 413(1) began to run, at the latest, on July 27, 2001, the last day on which Lucent could have cured the breach by informing the plaintiffs about Paragraph 5 benefits. The plaintiffs filed the instant lawsuit on March 11, 2008, more than six years after their claims began to accrue and well outside the section 413(1) limitation.

 The First Circuit has held that, pursuant to the three-year limitation of section 413(2), a plaintiff has "actual knowledge" of an ERISA violation when he or she is aware of "the essential facts of the transaction or conduct constituting the violation." *Edes v. Verizon Commc'ns, Inc.,* 417 F.3d 133, 142 (1st Cir.2005) (citing *Martin v. Consultants & Adm'rs, Inc.,* 966 F.2d 1078, 1086 (7th Cir.1992)). According to the complaint, all of the plaintiffs had actual knowledge of Lucent's failure to disclose the existence of Paragraph 5 benefits by January 1, 2002, meaning that absent tolling, a timely lawsuit would have to have been filed, at the latest, by January 1, 2005. Plaintiffs did not file this suit until March 2008.

### C. *American Pipe* Tolled Both the Section 413(1) and (2) Limitations.

Plaintiffs argue that the Supreme Court's holding in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), tolled section 413's limitations. In *American Pipe,* the Supreme Court faced a situation similar to the case at bar. The state of Utah, as plaintiff, filed a timely antitrust lawsuit on behalf of public entities who purchased concrete and steel from the alleged members of an antitrust cartel. At some point in the litigation, the defendants sought and were granted an order that the suit could not be maintained as a class action because the plaintiffs failed to satisfy the numerosity requirement of Rule 23. *Id.* at 542–43, 94 S.Ct. 756. Following the district court's ruling on class certification, 60 municipalities who would have been members of Utah's proposed class sought to intervene as plaintiffs. *Id.* at 544, 94 S.Ct. 756. By the time the motions to intervene were filed, however, the relevant statute of limitations had expired, and thus the district court denied all of the motions to intervene. *Id.*

On review, the Supreme Court reversed, holding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554, 94 S.Ct. 756. The Court emphasized that "[t]his rule is in no way inconsistent with the functional operation of a statute of limitations." *Id.* Statutes of limitations serve to "ensur[e] essential fairness to defendants and [to] bar[ ] a plaintiff who 'has slept on his rights' "; both functions

> are satisfied, when ... a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.

*Id.* 554–55, 94 S.Ct. 756. Since barring the Utah plaintiffs from filing suit would not "promote the purposes of the statute of limitations," the *American Pipe* tolling rule "is consistent both with the procedures of Rule 23 and with the proper function of limitations statutes." *Id.* at 555, 94 S.Ct. 756. To hold otherwise, the Court explained, would "deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." *Id.* at 553, 94 S.Ct. 756; *see also id.* at 551, 94 S.Ct. 756 ("To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found 'superior to other available methods for

the fair and efficient adjudication of the controversy.' ") (citing Fed.R.Civ.P. 23(b)(3)).

In *Crown, Cork & Seal Co. v. Parker*, the Court expanded the *American Pipe* tolling rule beyond intervenors to apply to putative class members who bring a separate suit after a court has declined to certify a lawsuit as a class action. 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) ("The filing of a class action tolls the statute of limitations as to all asserted members of the class, not just as to intervenors.") (quotation marks and citations omitted); *see also Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir.1998) (acknowledging that *Crown, Cork* extended *American Pipe* "to apply not only to plaintiffs who seek to intervene in the pending action, but also to would-be class members who file actions of their own"). Further, although class certification was denied in *American Pipe* for lack of numerosity, 414 U.S. at 543, 94 S.Ct. 756, and in *Crown, Cork* for lack of typicality, adequacy, and numerosity, 462 U.S. at 348, 103 S.Ct. 2392, courts have applied *American Pipe* tolling when a court refuses to certify a class on grounds that common questions do not predominate. *See, e.g., Goldstein v. Regal Crest, Inc.*, 62 F.R.D. 571, 579–80 (E.D.Pa.1974).

■ If *American Pipe* tolling applies to the instant plaintiffs' suit, their claims would be timely. It is clear from *American Pipe* and *Crown, Cork* that the filing of a class action tolls the statute of limitations as of the date the litigation is commenced. *See Crown, Cork*, 462 U.S. at 354, 103 S.Ct. 2392. For the plaintiffs, that date is March 22, 2002, when the *Fici* plaintiffs filed their complaint. Most courts, including the First Circuit, also agree that tolling ceases upon entry of an order denying class certification in the tri-

al court. *See Fernandez v. Chardon,* 681 F.2d 42, 48 (1st Cir.1982); *Womack v. United Parcel Serv., Inc.,* 311 F.Supp.2d 492, 496–97 (E.D.N.C.2004) (citing cases). *But see National Asbestos Workers Medical Fund v. Philip Morris, Inc.,* No. 98–CV–1492, 2000 WL 1424931, at *2 (E.D.N.Y. Sept. 26, 2000) (holding that with passage of Rule 23(f), allowing for interlocutory appeal of denial of class certification, *American Pipe* tolling extends through duration of appeal). The Court denied the *Fici* plaintiffs' motion for class certification on September 29, 2005.

■ Even if the Court views the record in the light most favorable to Lucent, which is the opposite of what it must do on a motion to dismiss, and assuming that the plaintiffs interlocutory appeal did not toll either provision of section 413, the plaintiffs filed their claims before the expiration of the limitations in section 413. Under *American Pipe,* the Court must subtract the time between the filing of the *Fici* lawsuit on March 22, 2002 and the Court's denial of the motion for class certification on September 29, 2005—a period of 3 years, 6 months and 7 days—from the elapsed time between when the plaintiffs' claims began to run under sections 413(1) and (2) and the date the plaintiffs filed the instant lawsuit. Only if the resulting period of time is greater than the three or six year time periods mandated in section 413 would the plaintiffs claims be time barred.

The earliest operative date on which section 413(1)'s six-year period of repose be-

gan to run was May 2, 2001, when some of the plaintiffs committed to accepting the April 2001 offer.[5] Six years, 10 months and 9 days elapsed between May 2, 2001 and March 11, 2008. When the *American Pipe* tolling period is subtracted from that total, the plaintiffs fall well within the six-year period of repose.

■ Similarly, the earliest possible date that section 413(2)'s three-year statute of limitation began to run was on September 25, 2001, when Lucent offered Paragraph 5 benefits to its remaining Union employees.[6] Six years, 5 months, and 15 days passed from that date until the plaintiffs filed the instant suit. Again, once the *American Pipe* tolling period is subtracted from that period, the plaintiffs satisfy the three-year statute of limitation.

Lucent makes three arguments in an attempt to nullify the preceding analysis. First, they claim that *American Pipe* does not apply to statutes of repose like section 413(1), and thus the plaintiffs claims are not timely. Second, they suggest that under *American Pipe,* even if a class action tolls a statute of limitations, the plaintiffs must pursue their claims with "reasonable diligence" and cannot rely on an extension of the statute of limitations equal to the duration of time that class action certification is pending. Third, they argue that because the Court denied the *Fici* class certification motion prior to the expiration of section 413(1)'s statute of repose—meaning the plaintiffs could have timely

---

**5.** The Court recognizes that some of the plaintiffs' claims would not have began to run under section 413(1) until the July 2001 offer. The Court uses the May 2, 2001 start date solely to demonstrate that whenever the section 413(1) clock began to run, the plaintiffs claims would be timely.

**6.** Again, the Court understands that some of the plaintiffs did not discover that Lucent had offered Paragraph 5 benefits to the remaining

employees until later in 2001, and that for those plaintiffs, section 413(2)'s statute of limitations would not have started to run on September 25, 2001. The Court calculates the plaintiffs' timeliness using the earlier date to demonstrate that under any interpretation of the plaintiffs' complaint, their lawsuit was filed before section 413(2)'s statute of limitation expired.

filed without relying on *American Pipe*—the Court should bar the plaintiffs' claims.

### 1. *American Pipe* Tolls Statutes of Repose Like Section 413(1).

■ Relying primarily on *Lampf v. Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), Lucent suggests in its motion that "a statute of repose [like section 413(1)] may not be judicially tolled" (Lucent's Mot. to Dism. at 10), and that consequently the plaintiffs' claims are untimely. In *Lampf*, the Supreme Court held, given a one-year statute of limitations and three-year statute of repose under section 10(b) of the Securities and Exchange Act, "that the *equitable* tolling doctrine is fundamentally inconsistent with the 1–and–3–year structure." *Lampf*, 501 U.S. at 363, 111 S.Ct. 2773 (emphasis added). In concluding that the "venerable principle" of equitable tolling did not apply to three-year period of repose at issue in the case, the Supreme Court spoke broadly, proclaiming that "because the purpose of the 3–year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period." *Id.*; *see also id.* ("The 3–year limit is a period of repose inconsistent with tolling.").

■ What Lucent unsuccessfully attempts to minimize is the distinction between *American Pipe* tolling and the equitable tolling addressed in *Lampf*. *American Pipe* tolling "is a species of legal tolling," in that it is derived from a statutory source, in this case Rule 23. *Newport v. Dell, Inc.*, No. CV08–0096–TUC, 2008 WL 4347311, at *4 n. 8 (D.Ariz., Aug. 21, 2008). Legal tolling is a distinct from equitable tolling, which is a judicially created doctrine that stops the running of a statute of limitations in certain situations involving unfairness or excusable mistake, for example, "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part." *Lampf*, 501 U.S. at 363, 111 S.Ct. 2773.[7]

---

7. The Court recognizes that many Circuit court decisions have referred to *American Pipe* tolling as equitable tolling. *Bridges v. Department of Md. State Police*, 441 F.3d 197, 211 (4th Cir.2006) ("The *American Pipe/Crown, Cork & Seal* equitable tolling rule is a limited exception to the universal rule that statutes of limitations are impervious to equitable exceptions."); *Veltri v. Building Serv. 32B–J Pension Fund*, 393 F.3d 318, 322–23 (2d Cir.2004); *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1279 (11th Cir.2003); *Sawtell v. E.I. du Pont de Nemours and Co., Inc.*, 22 F.3d 248, 252 (10th Cir.1994) ("[Plaintiff] next argues the running of the statute of limitations should have been tolled under the 'equitable tolling' doctrine of *American Pipe* ...."); *Youngblood v. Dalzell*, 925 F.2d 954, 959 n. 3 (6th Cir.1991); *Drumm v. Sizeler Realty Co., Inc.*, 817 F.2d 1195, 1196 (5th Cir.1987); *Donoghue v. Orange County*, 848 F.2d 926, 930 n. 3 (9th Cir.1987); *Washington v. Walker*, 734 F.2d 1237, 1240 n. 4 (7th Cir.1984).

The distinction between legal and equitable tolling, however, is only thrown into relief in limited circumstances, namely, when a court must decide whether to toll a statute of repose. None of the above cases that classify *American Pipe* tolling as equitable tolling squarely addressed that question, and thus their characterizations of *American Pipe* as an equitable tolling decision are of limited use to the case at bar.

In contrast, the few courts to have specifically considered the quandary facing this Court recognize that *American Pipe* tolling is qualitatively different from equitable tolling. *See, e.g., Joseph v. Wiles*, 223 F.3d 1155, 1167–68 (10th Cir.2000); *Newport v. Dell, Inc.*, No. CV–08–0096–TUC–CKJ(JCG), 2008 WL 4347311, at *4, n. 8 (D.Ariz. Aug. 21, 2008). As the Federal Circuit explained, "*American Pipe* and *Crown, Cork & Seal* were not based on judge-made equitable tolling, but rather on the Court's interpretation of Rule 23." *Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed.Cir.2000).

This is not to say that all circuits are in complete unanimity regarding the reach of *American Pipe*. For example, a circuit split currently exists regarding whether an individual plaintiff who is a putative members of a

The differences between the forms of tolling is crucial because the animating principles of legal tolling are compatible with tolling a statute of repose, while the reasoning behind equitable tolling is not. As is discussed above, the purpose of a statute of repose is to demarcate a period in which a plaintiff must place a defendant on notice of his or her injury, regardless of whether the plaintiff himself is aware that he has suffered an injury. The filing of a class action, which is the only conduct that can trigger *American Pipe* tolling, accomplishes the exact same goal, rendering the statute of repose superfluous for the period of time that the class action is pending. In this sense, "application of the American Pipe tolling doctrine to cases such as this one does not involve 'tolling' at all." *Joseph v. Wiles*, 223 F.3d 1155, 1167–68 (10th Cir.2000). In contrast to legal tolling, equitable tolling would frequently work to frustrate statutes of repose by extending the time in which a plaintiff could file suit without providing the defendants with any notice of the potential claims against them.

Thus, despite the broad language in *Lampf* rejecting the tolling of statutes of repose, all lower federal courts, including two from this Circuit, to examine whether *American Pipe* tolling applies to statutes of repose have found *Lampf* limited exclusively to the concept of equitable tolling and have held that *American Pipe* requires the tolling of statutes of repose. *See Joseph*, 223 F.3d at 1167–68; *Champion v. Homa*, No. 3:03–cv–275–MEF, 2008 WL 900967, at *10–11 (M.D.Ala. March 31, 2008) ("Although the Supreme Court ... held that equitable tolling does not apply

to statutes of repose, a majority of lower courts addressing the issue have declined to extend that holding to cases in which a plaintiff argues the pendency of a prior class action should toll the running of a statute of limitations or a statute of repose."); *Andrews v. Chevy Chase Bank, FSB*, 243 F.R.D. 313, 316–17 (E.D.Wis. 2007) (Adelman, J.) ("Although the Supreme Court has held that equitable tolling does not apply to statutes of repose, that holding is not applicable to the present case because the [*American Pipe* ] tolling that plaintiffs seek is legal rather than equitable in nature."); *In re Enron Corp. Secs. Litig.*, 465 F.Supp.2d 687, 716–18 (S.D.Tex.2006) (Harmon, J.) (finding that *American Pipe* tolling is legal in nature and adopting the reasoning of *Joseph* and progeny); *In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 600 n. 11 (N.D.Ill. 1998) (Castillo, J.) (citing to *Crown, Cork* in holding that "the statute of repose was legally tolled between the [class action] lawsuit's filing" and the denial of certification); *Ballard v. Tyco Int'l, Ltd.*, No. MDL 02–MD–1335–PB, Civ. 04–CV–1336–PB, 2005 WL 1683598, at *7 (D.N.H. July 11, 2005) (Barbadoro, J.) ("Legally tolling the repose period while a class action is pending therefore does not compromise the purpose served by statutes of limitations and repose."); *Official Comm. of Asbestos Claimants of G–I Holding, Inc. v. Heyman*, 277 B.R. 20, 31–32 (S.D.N.Y. 2002) (Sweet, J.) ("[T]he tolling of any putative class action member is the tolling that occurs any time an action is commenced and class certification is pending."); *Salkind v. Wang*, Civ. A. No. 93–10912–WGY, 1995 WL 170122, at *2, *3

class action and who files his or her own suit before to a court denies class certification in the class certification, is entitled to *American Pipe* tolling. *Compare In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir.2008) (applying *American Pipe* to such

suits) *with Wyser–Pratte Mgmt. Co. Inc. v. Telxon Corp.*, 413 F.3d 553, 569 (6th Cir.2005) (refusing to apply *American Pipe* to such suits; *see also* Gregory P. Joseph, *Federal Practice: Circuit Splits*, The National Law Journal, Apr. 13, 2009, at 18.

(D.Mass. Mar. 30, 1995) ("Although equitable tolling is inapplicable, *American Pipe* does toll the *Lampf* bar of repose for as many of [the plaintiff's] claims which are part of a class action against the same defendant(s) until the class is decertified or [the plaintiff] opts out.") (citations omitted); *Mott v. R.G. Dickinson & Co.*, No. 92–1450–PFK, 1993 WL 63445, at *5 (D.Kan. Feb. 24, 1993) (Kelly, C.J.) (holding that *American Pipe* tolling is legal in nature and not prohibited with respect to statutes of repose under *Lampf*). Copious research has not unearthed a single case in which a court recognized the distinction between legal and equitable tolling and still concluded that *Lampf* precluded the application of *American Pipe* to statutes of repose.[8]

■ Lucent also argues that the statutory language of ERISA § 413, specifically the "fraud or concealment exception,"[9] cannot support the tolling of section 413(1)'s statute of repose. Lucent submits that by providing for a single tolling exception to the statute of repose, Congress intended to preclude all other methods of tolling. This argument is not bereft of logic. Nonetheless, the Court believes *American Pipe* means what it says, and does not read section 413's exception as precluding this Court from tolling the section 413(1)'s six-year statute of repose during the pendency of a class action. To hold otherwise would promote the exact evil that *American Pipe* sought to prevent—the filing of duplicative suits to protect putative class members' rights—without promoting the benefits of statutes of repose. Accordingly, the Court holds that *American Pipe* tolls section 413(1)'s six-year statute of repose.

### 2. *American Pipe* Mandates a Mathematical Calculation of Tolling.

■ Lucent next argues that even if *American Pipe* applies, the plaintiffs failed to file their lawsuit within the relevant time period. They base this claim on equitable tolling decisions that limit the duration of tolling to a "reasonably necessary" period of time and require that plaintiffs generally pursue their claims with "reasonable diligence." (Lucent's Mot. to Dism. at 14–15 (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996) and *Owens v. United States*, 236 F.Supp.2d 122, 129 (D.Mass.2002)) *rev'd in part on different grounds* 483 F.3d 48 (1st Cir.2007).) Lucent's argument, however, suffers from at least two infirmities.

First, because the cases cited by Lucent speak exclusively to equitable tolling, they have little relevance to the instant action. Where fairness is at issue, as it is with equitable tolling, it makes sense to require some diligence on the part of a plaintiff in order to ensure that the defendants are not unduly prejudiced by a plaintiff's de-

---

8. Lucent cites to two cases that hold that section 413(1)'s six-year statute of repose could not be tolled. *See Radford v. General Dynamics Corp.*, 151 F.3d 396, 400 (5th Cir. 1998) ("Section 413 of ERISA is a statute of repose, establishing an outside limit of six years in which to file suit, and tolling does not apply."); *Cacha v. Montaco, Inc.*, 147 N.C.App. 21, 554 S.E.2d 388, 392–93 (2001) (holding that *American Pipe* could not, under any circumstances, toll a statute of repose). *Radford*, however, contemplates only equitable tolling and does not even cite *American Pipe;* similarly, *Cacha* addresses only equitable tolling concerns, and relies on state court decisions in rejecting the application of *American Pipe* to statutes of repose.

9. Under ERISA § 413, a plaintiff must filed within the three or six year periods, "except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113 (2006).

lay. *American Pipe*, which is a tool for judicial economy, promotes the goals of Rule 23, and rests on the notice provided to defendants by the filing of a class action, has nothing to do with fairness; the duration of its extension of the statute of limitations thus cannot hinge on concepts of reasonableness or diligence.

Second, *American Pipe* leaves no uncertainty about the tolling effect of a class action lawsuit. Under *American Pipe*, a statute of limitations is tolled for a putative plaintiff's claims from the initiation of the class action to which the plaintiff is a potential class member until the denial of a motion for class certification. There is nothing subjective about *American Pipe;* all that is left for this Court is simple math. The Supreme Court in *United States v. Ibarra*, 502 U.S. 1, 4, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991), explained that "[p]rinciples of ... tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped." That command applies with full force here, and demonstrates that plaintiffs' suits are timely.[10]

This Court will not graft a "reasonableness" or "diligence" requirement onto *American Pipe* when the Supreme Court has stated clearly that *American Pipe* tolling involves a simple mathematical computation.

### 3. That Plaintiffs Could Have Filed Within the Statute of Repose Is Irrelevant.

■ Lucent's most forceful argument—that the plaintiffs could have filed their claims within the section 413(1)'s statute of repose without the benefit of *American Pipe*—presents the closest question. (*See* Lucent's Mot. to Dism. at 11–12.) Judge Lindsay denied the *Fici* motion for class certification on September 29, 2005. Section 413(1)'s six-year limitation did not expire until May 2, 2007, leaving the plaintiffs with more than one-and-a-half years to file suit without necessitating reliance on *American Pipe.*

Some courts applying the equitable tolling doctrine have found that where a plaintiff could file a suit within the statute of limitations without relying on tolling, plaintiff's failure to do so functions as a factor in determining whether or not to toll a statute of limitations. *See, e.g., Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1331 (8th Cir.1995) (refusing equitably to toll a statute of limitations where the plaintiff could have filed his suit within the statute of limitations). Again, the clarity of the Supreme Court's statements in *American Pipe* and *Crown, Cork* render this balancing of factors unnecessary. Once it is clear that *American Pipe* applies, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe*, 414 U.S. at 554, 94 S.Ct. 756. Because the plaintiffs in this case qualify for *American Pipe* tolling, this Court does not have the discretion to otherwise limit the period of time in which they are permitted to file suit.

In conclusion, it is clear that the Court must calculate the timeliness of plaintiffs'

---

**10.** Unlike *American Pipe*, the cases cited by Lucent merely clarify the amount of time that a plaintiff is entitled to equitable tolling. Put differently, *Johnson* and *Owens* explain that in certain circumstances, the period of tolling stops when a plaintiff ceases to pursue her rights in a diligent manner. *American Pipe* explains to lower courts, in explicit and objective terms not involving diligence or reasonableness, exactly when to stop and start the running of a statute of limitations.

# 180

suit by subtracting the *American Pipe* tolling period from the amount of time that has accrued since the clock began to run under sections 413(1) and 413(2). As discussed above, under the analysis mandated by *American Pipe* and *Crown, Cork*, plaintiffs filed their claims in a timely manner.

### D. The Plaintiffs' Claims Are Sufficiently Similar to the *Fici* Class Allegations Such that *American Pipe* Applies

As a final matter, in order to be eligible for *American Pipe* tolling, the claims of a subsequent plaintiff must be sufficiently similar to the claims brought by the failed class such that the class action effectively put the defendant on notice of the plaintiff's potential claims. *See American Pipe*, 414 U.S. at 561, 94 S.Ct. 756 (Blackmun, J., concurring) (stating that claims should "concern the same evidence, memories, and witnesses as the subject matter of the original class suit [so that] the defendant will not be prejudiced"); *Crown, Cork*, 462 U.S. at 354, 103 S.Ct. 2392 (Powell, J., concurring) (requiring that a plaintiff's claims not be "different or peripheral" to the claims in the original class action). The touchstone of similarity is that the thwarted class action lawsuit have placed the defendants on notice of the claims that an individual plaintiff will bring in a separate action after the denial of class certification. *Id.* at 354–55, 103 S.Ct. 2392 (" 'Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation.' When thus notified, the defendant normally is not prejudiced by tolling of the statute of limitations.") (quoting *American Pipe*, 414 U.S. at 555, 94 S.Ct. 756).

Judge Harmon of the Southern District of Texas neatly described this similarity requirement:

The majority of courts have followed Justice Powell's reasoning and concluded that subsequent individual claims, filed after denial of class certification or after granting class certification and opting out, need not be identical to the original class action's for tolling to apply as long as they share a common factual basis and legal nexus so that the defendant would rely on the same evidence and witnesses in his defense.

*In re Enron Corp. Secs. Litig.*, 465 F.Supp.2d at 718; *see id.* (cases cited).

The initial *Fici* complaint, which alleged exactly the types of breach claimed by the instant plaintiffs, plainly put Lucent on notice of the potential claims it might have to defend, the factual bases for those claims, and the potential witnesses who might be called. As a result, the plaintiffs are entitled to *American Pipe* tolling, bringing their claims within ERISA's statute of limitations and repose.

### E. The Plaintiffs' State Law Claims for Misrepresentation and Fraud Are Preempted by ERISA

The plaintiffs concede that if their ERISA claims are not time barred then their state law claims for misrepresentation and fraud are preempted by ERISA. (Pls.' Opp. to Lucent's Mot. to Dism. at 17 ("Plaintiffs agree the Court should find their state law claims preempted.").) Because the Court holds that the plaintiffs can proceed with their ERISA claims, the Court necessarily also holds that the plaintiffs' state law claims are preempted by ERISA. Consequently, Count III of the plaintiffs' amended complaint is dismissed.

## III. CONCLUSION

For the reasons discussed above, the Court DENIES Lucent's motion to dis-

miss Counts I and II and GRANTS Lucent's motion to dismiss Count III.

SO ORDERED.