**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALFRED ALBANO, an unmarried
man; MONICA LEWIS, an unmarried
woman; SAMANTHA BAKER, an
individual; ARIEL BARR, an
unmarried man; PHILLIP BARR, a
single man; KEITH BODIE, husband;
STACY BODIE, wife; JON L. BRUCE,
an individual; CRAIG BURKE,
husband; LINDA BURKE, wife;
DAWN R. CAIN, an individual;
CHRISTINA CARLSON, an individual;
CHARLES CHEN, husband; LISA
CHEN, wife; CHRISTOPHER
CORDASCO, an individual; PAUL
CRANDELL, husband; JENNIFER
CRANDELL, wife; KENT ELLSWORTH,
husband; LAUREE ELLSWORTH, wife;
RONALD FILIPSKI, husband; LAURA
FILIPSKI, wife; ANGELICA HARVEY,
an individual; DIRK HOWARD,
husband; NANCY HOWARD, wife;
GEORGE HULECKI, husband; JEANNE
HULECKI, wife; CANDACE HURTT,
wife; JAMES CRAIG, husband;
ROBERT KEGERREIS, Trustee of the
Kegerreis Family Trust u/a/d June
15, 2005; CYNTHIA KEGERREIS,
Trustee of the Kegerreis Family
trust u/a/d June 15, 2005;

2103

JOHN R. LETTEER, husband; JUDITH LETTEER, wife; KELLY J. MALLORY, an individual; CHARLES MCGOLDRICK, husband; MAUREEN MCGICK, wife; ROBERT L. MITCHELL, a single man; BEATRICE M. LINNE, an unmarried woman; RICHARD NAVARRO, an individual; SCOTT A. OLMSTEAD, husband; AMBER S. OLMSTEAD, wife; DONALD W. ROBERTS, husband; JULIA A. ROBERTS, wife; LINDA S. RODELA, an individual; JACK E. ROSE, JR., husband; SHAWNA R. ROSE, wife; MARK B. SAMFORD, husband; REBECCA L. SAMFORD, wife; JANE D. SCHMALTZ, an individual; RICHARD SCOTT, husband; SHARON SCOTT, wife; DENNIS SIMPSON, an individual; BLAKE SLAUGHTER, husband; CHANTELL SLAUGHTER, wife; BRUCE TARMAN, husband; JANELLE TARMAN, wife; MICHAEL L. TOMAINO, II, an individual; ERIC T. VALIMAKI, husband; CRISTI D. VALIMAKI, wife; DAVID A. WENMAN, husband as Trustee of the Wenman Family Trust dated July 9, 1999; JACQUELINE DIANE WENMAN, wife, as Trustee of the Wenman Family Trust dated July 9, 1999;

SETH WHEELER, husband, on his own behalf and on behalf of all others similarly situated; JACQUELINE WHEELER, wife, on her own behalf and on behalf of all others similarly situated; PHILLIS J. SIMPSON, an individual,
*Plaintiffs-Appellants,*

v.

SHEA HOMES LIMITED PARTNERSHIP, an Arizona limited partnership; J.F. SHEA CO., INC., a Nevada corporation, DBA Shea Homes,
*Defendants-Appellees.*

No. 09-15808
D.C. Nos.
2:07-cv-02359-SMM
2:08-cv-00505-SMM

ORDER AMENDING CERTIFICATION ORDER TO THE STATE SUPREME COURT OF ARIZONA AND AMENDED ORDER

Filed January 3, 2011
Amended February 3, 2011

Before: Kenneth F. Ripple, Pamela Ann Rymer and Raymond C. Fisher, Circuit Judges.*

## COUNSEL

Robert H. Willis, Burdman & Shore, Phoenix, Arizona, for the plaintiffs-appellants.

Gary L. Birbaum and Barry R. Sanders, Mariscal Weeks McIntyre & Friedlander, Phoenix, Arizona, for defendants-appellees.

*The Honorable Kenneth F. Ripple, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

**ORDER**

The Appellants' petition for panel rehearing is premature because there has been no judgment. *See* Fed. R. App. P. 40(a)(1). Appellants' petition for panel rehearing is construed as a motion to amend the certification order, and is **GRANTED in part and DENIED in part**.

The certification order of this court issued on January 3, 2011, is amended as follows: At slip opinion page 39, in the first full paragraph, the words "the motion to certify in" should be stricken from the sentence that begins, "The plaintiffs conclude . . . ." The corrected sentence should read: "The plaintiffs conclude that the district court therefore erred in failing to toll the statute of repose during the entire pendency of the *Hoffman* litigation."

No further amendments shall be entertained.

---

**ORDER**

Alfred Albano and two other homeowners in a Gilbert, Arizona subdivision seek review of the district court's judgment holding that their defective construction claims against the developer, Shea Homes Limited Partnership, are barred by the Arizona state statute of repose. The district court held that Arizona, as a matter of state law, would apply the tolling rule of *American Pipe & Construction Co.* v. *Utah*, 414 U.S. 538 (1974), as expanded by *Crown, Cork & Seal Co., Inc.* v. *Parker*, 462 U.S. 345 (1983). It further held, however, that under the circumstances of this case, the rule did not save the plaintiffs' claims.

The Supreme Court of Arizona never has determined whether the rule of *American Pipe* and its progeny applies to state class actions filed in its courts and, more specifically, to

state class actions subject to a statute of repose. Because we do not know how the Supreme Court of Arizona would apply *American Pipe* tolling to the circumstances before us and because these questions of law present important matters of public policy for the State of Arizona, we conclude that the most prudent course is to certify these matters to the Supreme Court of Arizona.

## BACKGROUND

### A.  *Hoffman* Litigation

In June 2003, a number of homeowners in the Carriage Lane subdivision, located in Gilbert, Arizona, filed an action against the developer, Shea Homes Limited Partnership, in Superior Court in Arizona. The case, captioned *Mark Hoffman, et al.* v. *Shea Homes Limited Partnership, et al.*, CV2003-011388, was filed as a class action and sought damages for various defects in the construction of the owners' homes; the plaintiffs in the present action were members of the putative class.[1]

As of May 2005, no motion for class certification had been filed. Accordingly, the Superior Court informed the parties that it would "treat the case as one involving only three homeowners." Later, the Superior Court issued an order that, "[i]f Plaintiffs intend to file a motion for class certification in this case, that motion must be filed and served on all parties not later than noon on Friday, October 28, 2005." However, it also stated: "The Court's order permitting the filing of the motion for class certification is without waiver on the part of any defendant or third-party defendant to raise an issue as to the timeliness of the motion."

---

[1]In *Hoffman*, the plaintiffs sought to represent a class comprised of "all persons and entities presently owning an interest in one or more homes within Carriage Lane, as well as persons who may hereafter acquire an interest in one or more such living units within the Carriage Lane community."

The plaintiffs filed their motion for class certification on November 2, 2005. The Superior Court denied the motion as untimely and also because the class did not meet the requirements for certification under Arizona Rule of Civil Procedure 23. The Superior Court stated:

> Rule 23(c)(1) requires the Court to determine whether a class action may be maintained "[a]s soon as practicable after the commencement of an action brought as a class action . . . ." Here, Plaintiffs' motion was brought 28 months after its [sic] complaint was filed.
>
>      . . . .
>
> Plaintiffs' only explanation for their delay is that, for approximately 24 months, Shea "stonewalled" Plaintiffs' discovery requests. The Court has reviewed the supplemental briefing on this issue and finds Plaintiffs' explanation unpersuasive and, essentially, undocumented. The Court also notes that, except for the usual requests to "tweak" the Court's scheduling orders, no discovery disputes of any significance were brought by Plaintiffs to the Court's attention until the briefing on the instant motion.

Turning to the merits, the Superior Court further held that the plaintiffs had not "carried their burden here to show that there is sufficient 'typicality' and 'commonality' to warrant granting the motion for class certification."

In the same order, the Superior Court denied the plaintiffs' motion to amend the complaint to add eighty-six new plaintiffs. It appeared to the court that plaintiffs' counsel had " 'warehoused' the proposed, new plaintiffs." Additionally, Shea and the third-party defendants would suffer "significant prejudice" as a result of the delay. After these rulings by the

Superior Court, the three named plaintiffs in *Hoffman* settled their claims.

**B.** *Albano I*

In 2006, the plaintiffs—individuals who owned homes in Carriage Lane but who were not allowed to intervene in *Hoffman*—served a Notice and Opportunity to Repair ("NOR") on Shea Homes Limited Partnership identifying alleged defects in the construction of their homes. Plaintiffs filed a new action in Superior Court, *Albano, et al.* v. *Shea Homes Limited Partnership*, CV2006-00812 ("*Albano I*").[2] This action was dismissed because the plaintiffs had failed to comply with the Arizona Purchaser Dwelling Act, Ariz. Rev. Stat. Ann. § 12-1361 *et seq.*; specifically, they had not responded to the defendants' offers to repair.

**C.** *Albano II & Albano III*

After receiving the court's ruling in *Albano I*, the plaintiffs sent additional NORs to Shea Homes Limited Partnership. On November 5, 2007, the plaintiffs filed a third action in Superior Court, *Albano, et al.* v. *Shea Homes Limited Partnership*, CV2007-020525 ("*Albano II*").[3] The defendants removed this diversity action to federal court and subsequently moved to strike parts of the complaint. They also moved for summary judgment on the ground that the action was brought outside the applicable eight-year statute of repose set forth in Arizona Revised Statutes § 12-552(A), which provides:

> Notwithstanding any other statute, no action or arbitration based in contract may be instituted or maintained against a person who develops or develops

---

[2]In *Albano I*, the plaintiffs named Shea Homes Limited Partnership and J.F. Shea Co., Inc. d/b/a Shea Homes as defendants.

[3]The named defendants in *Albano II* were the same as the named defendants in *Albano I*.

and sells real property, or performs or furnishes the design, specifications, surveying, planning, supervision, testing, construction or observation of construction of an improvement to real property more than eight years after substantial completion of the improvement to real property.

For their part, the plaintiffs moved to remand to Superior Court.

Plaintiffs did not respond to the motion for summary judgment, and the defendants moved for summary disposition. The plaintiffs misinterpreted the motion as an entry of judgment and therefore filed a motion to set aside the judgment. The district court issued an order clarifying that a judgment had not been entered, denying the motion to set aside judgment as moot and granting the plaintiffs thirty days to respond to the motion for summary judgment.

Before the response deadline had passed, the plaintiffs filed another action in Superior Court; this action, *Albano et al.* v. *Shea Homes Arizona Limited Partnership*, CV2008-002357 (“*Albano III*”), named as the only defendant Shea Homes Arizona Limited Partnership. The defendant subsequently filed a voluntary appearance in Superior Court and removed the action to federal court.

*Albano II* and *Albano III* were consolidated and reassigned. The district court then held a conference to determine how to proceed on the defendants’ motions for summary judgment. The “parties agreed that the issues presented in the *Albano II* and *Albano III* motions were substantively identical and could be resolved by a single order.” In essence, these motions presented the question whether the plaintiffs’ claims were barred by the eight-year statute of repose or whether the rule of *American Pipe* tolled the time between the filing of the *Hoffman* class action and the denial of the certification motion in that case.

### D. District Court's Summary Judgment

The district court determined that the claims asserted in *Albano II* and *Albano III* were time-barred. The court observed that, for purposes of *Erie Railroad Co.* v. *Tompkins*, 304 U.S. 64 (1938), statutes of limitations are substantive in nature, and, therefore, state statutes of limitations applied in diversity cases. Similarly, "[t]olling provisions are treated as an integral part of a statute of limitations, and district courts must apply whatever tolling provisions are recognized under state law."

The district court noted that the Supreme Court of Arizona had not adopted the *American Pipe* rule. However, the court was persuaded that the Supreme Court of Arizona would adopt that rule because Arizona's class action rule is identical to the federal rule and because Arizona treats cases interpreting the federal rule as authoritative, but not controlling. Additionally, Arizona appellate courts had indicated that they would apply the *American Pipe* rule under appropriate circumstances. Finally, the court observed that "the Arizona Supreme Court [had] held that filing a class claim in an administrative procedure tolled the statute of limitations for all putative class members who were not, at the time of filing, barred by the statute of limitations."

The district court also found persuasive the reasoning of the majority of the courts which had held that the tolling rule of *American Pipe* was a rule of legal tolling, not equitable tolling. As such, the rule could toll a statute of repose.

Applying the *American Pipe* rule to the plaintiff's claims, the court concluded that legal tolling could not save the action against Shea Homes Arizona Limited Partnership (the defendant in *Albano III*) because the rule "presupposes that the defendant is identical in both the class action suit and the individual class members' suits." Shea Homes Arizona Limited Partnership had not been named as a defendant in the *Hoff-*

*man* action; consequently, the *Hoffman* class action did not toll the time to bring claims against Shea Homes Arizona Limited Partnership.

The court then addressed whether *American Pipe* tolled the statute of repose with respect to the claims brought against the remaining defendants in *Albano II*. The plaintiffs had argued that the statute of repose should be tolled "for the entire time *Hoffman* was pending." However, the court believed that a modified application of the rule was appropriate. It stated that "such prolonged tolling [was] unwarranted" given "that the *Hoffman* plaintiffs did not seek to certify the class for nearly two and a half years, and that delay was a basis on which the motion to certify was denied." The district court elaborated:

> "The tolling rule of *American Pipe* is a generous one, inviting abuse." *Crown, Cork*, 462 U.S. at 354 (Powell, J., concurring). Arizona Rule of Civil Procedure 23, like its federal counterpart, assumes that a motion for class certification will be brought "as soon as practicable after the commencement" of a class action. *See* Ariz. R. Civ. P. 23(c)(1); *see also* Fed. R. Civ. P. 23(c)(1)(A). To permit tolling as urged by Plaintiffs "tests the outer limits of the *American Pipe* doctrine and . . . falls beyond its carefully crafted parameters into the range of abusive options." *Robbins* v. *Fluor Corp.*, 835 F.3d 213, 214 (9th Cir. 1987) (quoting *Korwek* v. *Hunt*, 827 F.2d 874, 879 (2d Cir. 1987)) (declining to extend the *American Pipe* doctrine to include successor class actions); *Catholic Soc. Servs., Inc.* v. *INS*, 182 F.3d 1053, 1059-61 (9th Cir. 1999). Plaintiffs' position would encourage plaintiffs to file putative class actions in name only, with no intention of actually pursuing the case as a class claim, and delay seeking class certification until the last possible minute. Those plaintiffs would clearly benefit from any resulting delay and frustrate the principal purposes

of the class action procedure—"promotion of effi-
ciency and economy of litigation." *Crown, Cork*, 462
U.S. at 349.

To account for plaintiffs' delay, therefore, the district court
determined that "tolling is appropriate for the period of time
representing the date from which the motion for class certifi-
cation [was filed] until it was decided, " specifically Novem-
ber 2, 2005 to February 24, 2006. According to the court,
"[t]his period of tolling recognizes the careful balancing of
the interests of plaintiffs, defendants, and the court system
struck in *American Pipe* and *Crown, Cork*." Without the ben-
efit of tolling from the time the *Hoffman* case was filed, the
plaintiffs' claims asserted in *Albano II* were untimely. Conse-
quently, the district court granted the defendants' motion for
summary judgment.

## DISCUSSION

The plaintiffs contend that the district court erred in failing
to give them the full benefit of *American Pipe* tolling. The
plaintiffs argue that *American Pipe* is a rule of legal tolling
and thus can operate to toll a statute of repose. Indeed, the
plaintiffs submit that *American Pipe* and *Crown, Cork* estab-
lished a bright-line rule: Any time a motion to certify a class
action is filed, the statute of limitations or repose is tolled dur-
ing the pendency of that cause of action. The plaintiffs con-
clude that the district court therefore erred in failing to toll the
statute of repose during the entire pendency of the *Hoffman*
litigation. Had the district court given the plaintiffs the full
benefit of *American Pipe* tolling, their claims would have
been timely.

The defendants also believe that the Arizona courts would
adopt the rule of *American Pipe*/*Crown, Cork*. However, the
defendants maintain that the rule is an equitable tolling doc-
trine, based on the balancing of competing interests. As an
equitable doctrine, it does not apply to toll a statute of repose.

The defendants maintain that the courts of Arizona would not be swayed by the reasoning of the federal courts that have treated the rule of *American Pipe* as a legal tolling rule. Instead, they believe that the Supreme Court of Arizona would treat *American Pipe* as an equitable doctrine and, therefore, subject to a more flexible application according to the equities of each case.

As suggested by our discussion of the parties' arguments, our task here is to discern how the Supreme Court of Arizona would resolve the limitations and tolling questions before us. A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations. *Nevada Power Co.* v. *Monsanto Co.*, 955 F.2d 1304, 1306 (9th Cir. 1992) ("[F]ederal courts exercising diversity jurisdiction are to use state statutes of limitation."). Federal courts must abide by a state's tolling rules, which are integrally related to statutes of limitations. *See State Farm Mut. Auto. Ins. Co.* v. *Boellstorff*, 540 F.3d 1223, 1228 (10th Cir. 2008) (following Colorado's tolling rules in a diversity action because "they are an integral part of several policies served by the statute of limitations" (internal quotation marks omitted)).[4] In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court. *Harvey's Wagon Wheel, Inc.* v. *Van Blitter*, 959 F.2d 153, 154 (9th Cir. 1992). If the state's highest court has not decided an issue, it is the responsibility of the federal courts sitting in diversity to predict "how the state high court would resolve it." *Air-Sea Forwarders, Inc.* v. *Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (internal quotation marks omitted). There are times, however, when diversity cases in federal courts " 'present significant issues . . . with important public policy ramifications.' " *Munson* v. *Del Taco, Inc.*, 522 F.3d 997, 1003 (9th Cir. 2008) (quoting *Kremen* v. *Cohen*, 325

---

[4]*See also Hollander* v. *Brown*, 457 F.3d 688, 694 (7th Cir. 2006) (treating tolling and equitable estoppel as substantive for *Erie* purposes and, therefore, applying state law).

F.3d 1035, 1037 (9th Cir. 2003)). In such circumstances, it may be appropriate, when permitted under state law, to certify those questions to the state court as a matter of " 'deference to the state court on significant state law matters.' " *Id.* (quoting *Kremen*, 325 F.3d at 1037).

## A. Application of *American Pipe* and *Crown, Cork*

### 1.

In determining whether the Supreme Court of Arizona would adopt the rule of *American Pipe/Crown, Cork*, we begin with a review of that rule. In *American Pipe*, the plaintiffs instituted a Sherman Act suit, which was brought as a class action representing "public bodies and agencies of the state and local government in the State of Utah who are end users of pipe acquired from the defendants and also those States in the Western Area which had not previously filed similar actions." 414 U.S. at 541 (internal quotation marks omitted). However, class certification later was denied because the district court determined that the number of plaintiffs was not so numerous as to make joinder impracticable. *See id.* at 543. Subsequently, individual members of the putative class moved to intervene, but that motion was denied on the ground that the limitations period had run.

In reviewing this determination, the Supreme Court first looked at the history of Federal Rule of Civil Procedure 23, which governs class actions. In its original form, the rule had not contained any mechanism for determining the appropriate class in advance of final judgment. The Court observed that "[a] recurrent source of abuse under the former Rule lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests." *American Pipe*, 414 U.S. at 547. Given Rule 23's structural bias towards the plaintiff, courts were hesitant to allow individuals to intervene in

the action after the statute of limitations for an individual claim had run. *See id.* at 549-50.

The 1966 amendments to Federal Rule of Civil Procedure 23 directly addressed much of the potential unfairness of the prior rule by requiring that a determination on the class action be made "[a]s soon as practicable after the commencement of an action brought as a class action." *Id.* at 547 (internal quotation marks omitted). The Court elaborated:

> A federal class action is no longer "an invitation to joinder" but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions. Under the circumstances of this case, where the District Court found that the named plaintiffs asserted claims that were "typical of the claims or defenses of the class" and would "fairly and adequately protect the interests of the class," Rule 23(a)(3), (4), the claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue. *Thus, the commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs.* To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).

*Id.* at 550-51 (emphasis added). Thus, the Court held that "the commencement of the original class suit tolls the running of

the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 553. A contrary rule, the Court also explained, "would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." *Id*. The Court did not believe that this new rule was "inconsistent with the functional operation of a statute of limitations." *Id.* at 554. It explained:

> [S]tatutory limitation periods are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. . . . The policies of ensuring essential fairness to defendants and of barring a plaintiff who "has slept on his rights," are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.

*Id.* at 554-55 (internal citations omitted).

The Court observed that it was not establishing a right of intervention. By contrast, it simply was holding that a class action operated to toll the applicable statute of limitations, and, therefore, the statute of limitations did not act as a bar to intervention. Whether the plaintiffs should be granted intervention was a matter, in the first instance, for the district court. *See id.* at 560.

The concurring opinion emphasized that the new rule does not "necessarily guarantee intervention for all members of the purported class." *Id.* at 561 (Blackmun, J., concurring). Rather, whether individual parties were allowed to join the

action would continue to be determined by the mandatory and permissive joinder rules set forth in Federal Rule of Civil Procedure 24 (a) and (b).

Almost ten years after *American Pipe*, the Court handed down its decision in *Crown, Cork & Seal Co., Inc.* v. *Parker*, 462 U.S. 345 (1983). *Crown, Cork* considered whether the rule of *American Pipe* should be extended to parties who, after the denial of a motion for class certification, institute their own actions as opposed to seeking to intervene in the purported class action. The Court observed that "[m]uch the same inefficiencies would ensue if *American Pipe*'s tolling rule were limited to permitting putative class members to intervene after the denial of class certification." *Id.* at 350. Further, extending *American Pipe* to individuals who institute separate actions does not frustrate the policies behind a statute of limitations: "Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification." *Id.* at 353.

As in *American Pipe*, a concurring opinion noted the limitations of the rule announced. According to the concurring opinion, the linchpin of the *American Pipe* rule was that it guaranteed timely notice of an action to the defendant. Consequently, "[c]laims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations." *Id.* at 355 (Powell, J., concurring).

*Crown, Cork* thus expanded the rule of *American Pipe* in two ways. First, it severed the connection between tolling under Federal Rule of Civil Procedure 23 and intervention under Federal Rule of Civil Procedure 24. Because parties now could institute their own actions, rather than being limited to seeking intervention, they no longer had to satisfy either the requirements of Rule 24(a), governing intervention as of right, or Rule 24(b), governing permissive intervention,

in order to gain access to the court. Second, *Crown, Cork* " 'untethered' " the *American Pipe* rule " 'from any necessary connection to the reasons for denying certification.' " *Bridges* v. *Dep't of Maryland State Police*, 441 F.3d 197, 211 (4th Cir. 2006) (quoting *Smith* v. *Pennington*, 352 F.3d 884, 892 (4th Cir. 2003)). The result of this untethering was to extend *American Pipe*

> as far as is justified by the objectively reasonable reliance interests of the absent class members. If courts were to toll statutes of limitations only when class certification was denied for lack of numerosity, the rule, which would turn on the substantive reason for the denial, would not discourage premature intervention because class members could not know or predict at the time of filing why class certification might eventually be denied.

*Bridges*, 441 F.3d at 211.

**2.**

With this understanding of the *American Pipe* rule, we must address whether the Supreme Court of Arizona would adopt this rule to toll statutes of limitations for purported class actions filed under its own version of Rule 23. As noted by the district court, Arizona Rule of Civil Procedure 23 "is identical to Federal Rule of Civil Procedure 23," and "Arizona courts view federal cases construing the federal rule as authoritative, though not controlling." (citing *Lennon* v. *First Nat'l Bank of Ariz.*, 518 P.2d 1230, 1232 n.3 (Ariz. Ct. App. 1974); *ESI Ergonomic Solutions, LLC* v. *United Artists Theatre Circuit, Inc.*, 50 P.3d 844, 848 n.2 (Ariz. Ct. App. 2002)).

Furthermore, the Supreme Court of Arizona has recognized class-action tolling in the administrative context. In *Arizona Department of Revenue* v. *Dougherty*, 29 P.3d 862 (Ariz. 2001), the court considered whether "filing a class claim in an

administrative procedure will toll the statute of limitations for all putative class members," *id.* at 863, or whether individual administrative claims were necessary to preserve one's rights. The court held that the filing of a class administrative claim satisfied the exhaustion requirement as to all members of the putative class and further held that the filing of the administrative claim tolled the statute of limitations "for other putative class members." *Id.* at 869. The court explained:

> The relevant section of the Arizona tax code is A.R.S. § 42-1106(C) (1999), which states that "failure to begin an action for refund or credit within the time specified in this section is a bar against recovery of taxes. . . ." However, the statute of limitations is tolled while the claimant exhausts his or her administrative remedies. *See Third & Catalina Assocs.* v. *City of Phoenix*, 182 Ariz. 203, 207, 895 P.2d 115, 119 (App. 1994). Logic dictates that, if a claimant is allowed to exhaust administrative remedies on behalf of a class of those similarly situated, tolling of the statute of limitations should receive similar treatment. This conclusion, of course, does not apply to those claims already barred at the administrative level by the statute of limitations at the time Ladewig's representative claim was filed. *See* A.R.S. § 42-1106 (1999).

*Id.* at 869-70.

Finally, lower Arizona courts have acknowledged the possibility that *American Pipe* tolling may apply in an appropriate situation. In *Hall* v. *Romero*, 685 P.2d 757 (Ariz. Ct. App. 1984), the plaintiffs sued the paid spokesperson for a planned development, claiming that he had misrepresented negligently the amenities that the development would have. In an attempt to save an otherwise untimely action, the plaintiffs argued that, under *American Pipe*, the state attorney general's prior action against the developer tolled the time within which the

plaintiffs had to institute their action against the spokesperson. The Arizona Court of Appeals disagreed:

> [The *American Pipe*] rule provides that commencement of a class action tolls the applicable statute of limitations for individual suits, as to all members of the class, until the class is certified. The rule presupposes that the defendant is identical in both the class action suit and the individual class members' suits. This presupposition would prevent us from applying the rule, even if we were to accept the plaintiffs' characterization of the attorney general's suit as one for the benefit of a "class."

*Id.* at 763.

Given that the state and federal rules are identical, that the Arizona courts treat federal courts' interpretation of Rule 23 as authoritative, and that the Supreme Court of Arizona has embraced the class action construct as a means of protecting individuals' rights in the administrative context, a strong argument can be made that the state supreme court would adopt *American Pipe*, as expanded by *Crown, Cork*, at least in some form.

However, the opposite view also has merit. Although Arizona courts treat federal interpretations of Rule 23 as authoritative, they are not controlling. Furthermore, *Dougherty*, although a seemingly strong endorsement of class action tolling, was a case that involved an action against the State; extending *Dougherty*'s holding to allow class action tolling against private individuals or corporations, however, involves the weighing of policy considerations different from those at play when a public defendant is involved.[5] Finally, *Hall* v.

---

[5]For instance, courts may determine that, for reasons of institutional integrity, it is necessary to allow a citizen to pursue an otherwise untimely action against a governmental entity, especially if the action involves alle-

*Romero* did nothing more than acknowledge the existence of the *American Pipe* rule as an abstract principle of law; it cannot be read as a strong indication of Arizona's willingness to adopt *American Pipe*. In sum, whether the Supreme Court of Arizona would embrace *American Pipe* is by no means a given.

## B.    Application of *American Pipe* to Statutes of Repose

Moreover, even if we were able to conclude confidently that the Supreme Court of Arizona would adopt the rule of *American Pipe*, the more difficult question is whether and to what extent the Supreme Court of Arizona would apply the rule of *American Pipe* to a statute of repose, specifically the statute of repose for construction defects. Because Arizona courts consider federal cases interpreting Federal Rule of Civil Procedure 23 as authoritative, the plaintiffs believe that Arizona courts likely would follow the lead of the majority of federal courts, which hold that *American Pipe* tolling is legal tolling and applies to statutes of repose.

The defendants believe, however, the district court's approach is more indicative of the approach that Arizona courts would follow. They note that the federal courts have not been consistent in categorizing *American Pipe* tolling as either equitable or legal. They argue that the rule is an equitable one grounded in concepts of fairness, an idea that seems to have been accepted by the Supreme Court of Arizona.[6] Consequently, Arizona courts would treat *American Pipe* tolling as a type of equitable tolling. Because it is equitable, the

---

gations of constitutional wrongdoing. Furthermore, governmental entities can use the taxing power to pay for unforeseen expenses (or at least spread those costs over a wider population); private defendants, whether individuals or corporations, do not have that power at their disposal.

[6]*See infra* at 2129-31 (discussing *Hosogai* v. *Kadota*, 700 P.2d 1327, 1331 (Ariz. 1985)).

defendants conclude that *American Pipe* tolling may be applied to toll a statute of limitations, but not a statute of repose.

**1.**

Although the general rule of class action tolling is well established, as are some applications of the *American Pipe* rule,[7] others still are being vetted in the courts of appeals and district courts.[8] Among the issues on which there is no consensus is whether *American Pipe* tolling should be characterized as a legal tolling doctrine or as an equitable one. Because it is generally accepted that "[s]tatutes of repose are not subject to equitable tolling," *Munoz* v. *Ashcroft*, 339 F.3d 950, 957 (9th Cir. 2003),[9] whether *American Pipe* sets forth a legal or equitable tolling doctrine takes on special importance in the context of a statute of repose.

---

[7]For instance, the courts of appeals agree that *American Pipe* does not "allow tolling when the district court in the previous action had denied class certification, and when the second action sought to relitigate the issue of class certification and thereby to circumvent the earlier denial." *Catholic Soc. Servs., Inc.* v. *INS*, 232 F.3d 1139, 1147 (9th Cir. 2000) (en banc); *Basch* v. *Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998); *Korwek* v. *Hunt*, 827 F.2d 874, 879 (2d Cir. 1987).

[8]The courts of appeals are split on whether *American Pipe* tolls the statute of limitations for an individual among a plaintiff-class who files an untimely, individual lawsuit before the disposition of a certification motion in the class action litigation. *Compare State Farm Mut. Auto. Ins. Co.* v. *Boellstorff*, 540 F.3d 1223, 1234 (10th Cir. 2008) (tolling limitations period); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008) (same), *with Wyser-Pratte Mgmt. Co.* v. *Telxon Corp.*, 413 F.3d 553, 569 (6th Cir. 2005) (refusing to toll limitations period under Ohio law); *Glater* v. *Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir. 1983) (refusing to toll limitations period).

[9]*See also Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson*, 501 U.S. 350, 363 (1991) (holding that equitable tolling principles do not apply to the three-year statute of repose for claims brought pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)).

The majority of the lower federal courts that have addressed the issue have held that *American Pipe* tolling is not equitable, but legal. In *Joseph* v. *Wiles*, 223 F.3d 1155 (10th Cir. 2000), for example, the court considered whether the filing of a class action tolled the three-year statute of repose for securities fraud under 15 U.S.C. § 77m. Relying on *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson*, 501 U.S. 350, 363 (1991), the defendants argued that *American Pipe* could not be invoked to toll the three-year statute of repose. The Tenth Circuit, however, held that *Lampf* was

> not relevant in the present context because the tolling that Mr. Joseph seeks is legal rather than equitable in nature. . . . [T]he tolling Mr. Joseph claims is the legal tolling that occurs any time an action is commenced and class certification is pending. *Cf. Korwek* v. *Hunt*, 827 F.2d 874, 879 (2d Cir. 1987) (tolling no longer appropriate after court ruled definitively to deny class certification).

> The Supreme Court addressed this type of tolling in *American Pipe & Const. Co.* v. *Utah*, 414 U.S. 538 (1974), where it held in the context of a statute of limitation that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 553. The Court expanded this rule in *Crown, Cork & Seal Co.* v. *Parker*, 462 U.S. 345 (1983), to include putative class members who later seek to file independent actions. *See id.* at 353-54 (statute of limitations remains tolled for all members of putative class until class certification is denied). *Lampf* did not overrule or even mention these cases, and we are not persuaded the three are incompatible. In fact, *Lampf* states that the "litigation . . . must be *commenced* within one year after the discovery of the facts con-

stituting the violation and within three years after such violation," indicating that the commencement of the action is the event which triggers tolling. *Lampf*, 501 U.S. at 364 (emphasis added).

> Tolling the limitations period for class members while class certification is pending serves the purposes of Rule 23 of the Federal Rules of Civil Procedure governing class actions. Rule 23 encourages judicial economy by eliminating the need for potential class members to file individual claims. If all class members were required to file claims in order to insure the limitations period would be tolled, the point of Rule 23 would be defeated.

*Joseph*, 223 F.3d at 1166-67 (footnote omitted) (parallel citations omitted); *see also Bright* v. *United States*, 603 F.3d 1273, 1287-88 (Fed. Cir. 2010) (characterizing class action tolling as "statutory" and holding that this type of tolling "is not triggered by equitable considerations"); *Arivella* v. *Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 176 (D. Mass. 2009) (noting differences between *American Pipe* and equitable tolling and stating that "[l]egal tolling is [ ] distinct from equitable tolling, which is a judicially created doctrine that stops the running of a statute of limitations in certain situations involving unfairness or excusable mistake").

According to these courts, applying statutory tolling to statutes of repose does not frustrate the policies reflected in a statute of repose. In *Joseph*, the Tenth Circuit explained:

> Tolling the limitations period while class certification is pending does not compromise the purposes of statutes of limitation and repose. Statutes of limitation are intended to protect defendants from being unfairly surprised by the appearance of stale claims, and to prevent plaintiffs from sleeping on their rights. *See Crown, Cork*, 462 U.S. at 352. "[T]hese

ends are met when a class action is commenced." *Id.* In this case, because a class action complaint was filed, defendants were on notice of the substantive claim as well as the number and generic identities of potential plaintiffs. Defendants cannot assert Mr. Joseph's claim was stale or that he slept on his rights.

Statutes of repose are intended to demarcate a period of time within which a plaintiff must bring claims or else the defendant's liability is extinguished. Here, the claim was brought within this period on behalf of a class of which Mr. Joseph was a member. Indeed, in a sense, application of the *American Pipe* tolling doctrine to cases such as this one does not involve "tolling" at all. Rather, Mr. Joseph has effectively been a party to an action against these defendants since a class action covering him was requested but never denied. Defendants' potential liability should not be extinguished simply because the district court left the class certification issue unresolved. Consequently, we conclude that *American Pipe* tolling applies to the statute of repose governing Mr. Joseph's action.

223 F.3d at 1167-68 (internal and parallel citations omitted). Similarly, in *Arivella* v. *Lucent Techs., Inc.*, 623 F. Supp. 2d 164 (D. Mass. 2009), the district court stated:

The differences between the forms of tolling is crucial because the animating principles of legal tolling are compatible with tolling a statute of repose, while the reasoning behind equitable tolling is not. . . . [T]he purpose of a statute of repose is to demarcate a period in which a plaintiff must place a defendant on notice of his or her injury, regardless of whether the plaintiff himself is aware that he has suffered an injury. The filing of a class action, which is

the only conduct that can trigger *American Pipe* tolling, accomplishes the exact same goal, rendering the statute of repose superfluous for the period of time that the class action is pending. . . . In contrast to legal tolling, *equitable tolling would frequently work to frustrate statutes of repose by extending the time in which a plaintiff could file suit without providing the defendants with any notice of the potential claims against them.*

*Id.* at 177 (emphasis added).

## 2.

There also is support for the contrary proposition—that *American Pipe* tolling is equitable. Indeed, the Supreme Court indicated that, in fashioning the existing rule, it took into account traditional equitable considerations. The Court noted that, in the case before it, certification had not been denied "for reasons of bad faith or frivolity," but for lack of numerosity. *American Pipe*, 414 U.S. at 553 (internal quotation marks omitted). Furthermore, the Court observed that, "[i]n recognizing *judicial* power to toll statutes of limitation in federal courts we are not breaking new ground." *Id.* at 558 (emphasis added). Among the examples of the Court's prior invocation of this power were "cases where the plaintiff ha[d] refrained from commencing suit during the period of limitation because of inducement by the defendant . . . or because of fraudulent concealment," *id.* at 559 (internal citation omitted), in other words, cases involving *equitable* tolling.

Equitable considerations also prompted the three concurring Justices in *Crown, Cork* to issue the following caution:

It seems important to reiterate the view expressed by Justice BLACKMUN in *American Pipe & Constr. Co.* v. *Utah*, 414 U.S. 538 (1974). He wrote that our decision "must not be regarded as encouragement to

lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." *Id.*, at 561 (concurring opinion). The tolling rule of *American Pipe* is a generous one, inviting abuse. It preserves for class members a range of options pending a decision on class certification. The rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following denial of class status.

462 U.S. at 354 (Powell, J., concurring) (parallel citations omitted).[10]

Furthermore, in circumstances where the distinction between legal and equitable tolling was not dispositive, courts regularly have referred to *American Pipe* tolling as "equitable." *See supra* note 10; *Bridges*, 441 F.3d at 211 (characterizing the rule of *American Pipe/Crown, Cork* as an "equitable tolling rule"); *Ellis* v. *City of San Diego, Cal.*, 176 F.3d 1183, 1189 n.3 (9th Cir. 1999) (citing *American Pipe* in support of the proposition that "[e]quitable tolling of the statute of limitations is a defense to all federal statutes of limitations, even those expressly contained within a given cause of action, unless tolling would be inconsistent with the legislative purpose").

---

[10]Additionally, the Court has cited *American Pipe* in support of propositions involving equitable tolling. *See Young* v. *United States*, 535 U.S. 43, 49 (2002) (citing *American Pipe*, among other authorities, for the proposition that "[i]t is hornbook law that limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute" (internal quotation marks and citations omitted)); *Irwin* v. *Dep't of Veterans Affairs*, 498 U.S. 89, 96 & n.3 (1990) (citing *American Pipe* in support of the proposition that "[w]e have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period").

**3.**

Although the weight of federal authority favors the view that *American Pipe/Crown, Cork* rule should be characterized as a rule of statutory tolling, it is not at all clear whether the Supreme Court of Arizona would adopt that view. The Arizona case that discusses *American Pipe* in the greatest detail is *Hosogai* v. *Kadota*, 700 P.2d 1327 (Ariz. 1985). In *Hosogai*, the Supreme Court of Arizona addressed the following issue: "May the statute of limitations for a second wrongful death action be equitably tolled by the filing of a first action dismissed because of a procedural defect?" *Id.* at 1329. In resolving this issue, the court stated:

> A court has a legitimate interest in the procedural rules that govern lawsuits, especially to prevent such rules from becoming a shield for serious inequity. Accordingly, a court may under certain circumstances make narrow equitable exceptions to statutes of limitations. *See American Pipe & Constr. Co.* v. *Utah*, 414 U.S. 538, 552-59 (1974); *Burnett* v. *New York Central R.R.*, [380 U.S. 424, 426-30 (1965)]. The history of the equitable tolling doctrine evidences this claim.

*Id.* at 1331 (parallel citations omitted). After reviewing some of the history of the equitable tolling doctrine, the court set forth the circumstances under which equitable tolling was appropriate:

> Equitable tolling is appropriate when it would effectuate: 1) the policies underlying the statute, and 2) the purposes underlying the statute of limitations. *Burnett* v. *New York Central R.R.*, *supra*, 380 U.S. at 427-28; *American Pipe & Constr. Co.* v. *Utah*, *supra*, 414 U.S. at 554-56. Equitable tolling has been found to effectuate the policies underlying a number of remedial federal statutes, including: the Federal

> Employer's Liability Act (FELA), *Burnett* v. *New York Central R.R.*, *supra*; Annot., 16 A.L.R.3d 637 (1967) (equitable tolling of statute of limitations in FELA cases); Title VII actions for unlawful discrimination in violation of the Civil Rights Act of 1964; *Zipes* v. *Transworld Airlines*, 455 U.S. 385 (1982) (timely filed claim with administrative agency which was dismissed after the expiration of the statute of limitations equitably tolls second action in federal court); . . . antitrust actions under the Clayton and Sherman Acts, *see American Pipe & Constr. Co.* v. *Utah*, *supra* (where class action suit is dismissed because class action status denied, the timely filing of technically deficient first action equitably tolls the statute of limitations); the Railway Labor Act, *Order of Railroad Telegraphers* v. *Railway Express Agency*, 321 U.S. 342 (1944) (statute of limitations equitably tolled during pendency of lengthy administrative proceedings).

*Id.* at 1331-32 (parallel citations omitted). The court then went on to determine that the policies underlying the wrongful death statute were consistent with equitable tolling. Similarly, the requirements for equitable tolling—timely notice to the defendant, lack of prejudice to the defendant in gathering evidence to defend against the later claim, and reasonable and good faith conduct by the plaintiff in prosecuting the initial action—had been met. Consequently, the court concluded that equitable tolling should apply to save the plaintiff's claim.[11]

*Hosogai*, as support for the proposition that *American Pipe*

---

[11]The Supreme Court of Arizona also called upon the Arizona legislature to enact a general savings statute for civil actions to "allow[ ] an action, dismissed for reasons unrelated to the merits after the statute of limitations has expired, to be reinstated if a second action is promptly filed thereafter." *Hosogai* v. *Kadota*, 700 P.2d 1327, 1330, 1334 (Ariz. 1985). The legislature did so. *See* Ariz. Rev. St. Ann. § 12-504.

tolling is equitable, cannot be dismissed as easily as the federal authorities that employ that characterization. The federal cases refer to *American Pipe* in passing and make no distinction between equitable and legal tolling. The same is not true of *Hosogai*. First, *Hosogai* did not simply reference *American Pipe* in support of a general proposition; the Supreme Court of Arizona mentioned *American Pipe* several times in direct reference to equitable tolling. Second, in *Hosogai*, the court incorporated concepts of legal tolling into its requirements for equitable tolling. The court held that, before equitable tolling could apply, there must be a determination as to whether tolling was consistent with the policies underlying the statute and the purposes underlying the statute of limitations. 700 P.2d at 1331. In this respect, the Supreme Court of Arizona's considerations in *Hosogai* are strikingly similar to those of the Supreme Court in *American Pipe*, in which the Court observed: "[T]he mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances *not inconsistent with the legislative purpose*." *American Pipe*, 414 U.S. at 559 (emphasis added).

The Supreme Court of Arizona's characterization of *American Pipe* tolling as equitable, coupled with its articulated concern that tolling be applied in a manner consistent with the statute's purpose, suggests that Arizona may not apply *American Pipe* to toll all statutes of limitations and repose. Pertinent to the present action, the Arizona legislature has crafted a detailed procedure for addressing construction defects and has set forth a specific time within which claims must be brought. It is possible that the Supreme Court of Arizona may agree with the district court in *Arivella* that, as a general proposition, the filing of a class action complaint satisfies the "purpose of a statute of repose . . . to demarcate a period in which a plaintiff must place a defendant on notice of his or her injury, regardless of whether the plaintiff himself is aware that he has suffered an injury." 623 F. Supp. 2d at 177. It also is

possible, however, that the Arizona court would determine that class action tolling is not consonant with the detailed statutory scheme. The Supreme Court of Arizona also might be persuaded that the statute of repose incorporates a policy determination that tolling of any kind, but especially class action tolling, is not appropriate in the context of litigation over construction defects. As explained by the Court in *American Pipe*, "statutory limitation periods are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." 414 U.S. at 554 (internal quotation marks omitted). However, assuming construction claims involve habitable residences, the defendant developer/contractor/subcontractor will not be in a position to preserve evidence critical to proving or disproving the claim. Additionally, construction litigation frequently does not involve the commonality of facts and issues necessary for class certification. *See, e.g.*, *Becker* v. *McMillin Constr. Co.*, 226 Cal. App. 3d 1493, 1496 (Cal. Ct. App. 1991) (recounting that class action was denied in earlier litigation for lack of commonality).[12] Thus, the Supreme Court of Arizona may conclude that the Arizona legislation, in enacting the statute of repose, was of the view that class-action construction claims are uniquely capable of bringing about the abuse identified by the concurrence in *Crown, Cork*:

> It seems important to reiterate the view expressed by Justice BLACKMUN in *American Pipe & Constr.*

---

[12]The Superior Court in *Hoffman*, the earlier class action in this matter, echoed this fact:

> Cases of this type are rarely, if ever, appropriate for class-action treatment, primarily because of the significant lack of "typicality" and "commonality" among the various homeowners. The court need not discuss this matter in detail but, instead, will refer the parties to its previous orders in three similar cases, in which it denied class certification where the claims, as here, involved alleged defects in "soils and slabs" and window/door waterproofing . . . .

*Co.* v. *Utah*, 414 U.S. 538 (1974). He wrote that our decision "must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." *Id.*, at 561 (concurring opinion). The tolling rule of *American Pipe* is a generous one, inviting abuse. It preserves for class members a range of options pending a decision on class certification. The rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following denial of class status.

462 U.S. at 354 (parallel citations omitted).

In short, application of *American Pipe* to toll Arizona's statute of repose for construction defects involves important public policy decisions for that state. Given the paucity of Arizona case law in this area, and the concomitant uncertainty in discerning the path the Arizona courts would follow, we believe the most prudent and respectful course is to certify these questions to the Supreme Court of Arizona.

**ORDER**

We find that questions of state law will be determinative of the claims currently pending in this court. We note that there is no controlling precedent in the decisions of the Arizona Supreme Court or in the Arizona Courts of Appeals. Therefore, pursuant to Arizona Revised Statutes § 12-1861 and Arizona Supreme Court Rule 27, we certify the following questions to the Arizona Supreme Court:

1. Does the filing of a motion for class certification in an Arizona court toll the statute of limitations for individuals, who are included within the class, to file individual causes of action involving the same defendants and the same subject matter?

2. If so, does this class-action tolling doctrine apply to statutes of repose, and more specifically, to the statute of repose for construction defects set forth in Arizona Revised Statute § 12-552?

3. If the doctrine applies to statutes of repose, and specifically Arizona Revised Statute § 12-552, may a court weigh the equities of the case in determining whether, and to what extent, an action is tolled?

We respectfully request the Arizona Supreme Court to exercise its discretionary authority under Arizona Supreme Court Rule 27 to accept and to decide these questions. Our phrasing of the questions should not limit the Court's consideration of the issues involved. If the Arizona Supreme Court declines certification, it should so state, and we will resolve the case based on our perception of Arizona law.

The Clerk will file with the Arizona Supreme Court an original and six certified copies of this Order and a list of the counsel appearing in this matter along with their addresses and telephone numbers, pursuant to Arizona Supreme Court Rule 27(a)(3)(c) & (a)(4). The panel retains jurisdiction over further proceedings in this court.

QUESTIONS CERTIFIED