**DYKEMA EXCAVATORS, INC. and Dykema Excavators, Inc. Welfare Benefits Plan, Plaintiffs,**

v.

**BLUE CROSS AND BLUE SHIELD OF MICHIGAN, Defendant.**

**Case No. 13–12151.**

United States District Court, E.D. Michigan, Southern Division.

Signed Jan. 16, 2015.

Benjamin A. Anderson, Kyle Patrick Konwinski, Perrin Rynders, Stephen F. MacGuidwin, Aaron M. Phelps, Varnum, Riddering, Grand Rapids, MI, for Plaintiffs.

Donovan Solanus Asmar, Michael R. Colasanti, Rebecca D. O'Reilly, Bodman PLC, Detroit, MI, G. Christopher Bernard, James J. Carty, Matthew R. Rechtien, Bodman PLC, Ann Arbor, MI, Thomas P. Van Dusen, Bodman PLC, Troy, MI, for Defendant.

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVID M. LAWSON, District Judge.

This case is one of over thirty pending in this district in which defendant Blue Cross & Blue Shield of Michigan (BCBSM) is being sued by various businesses to recover funds BCBSM illegally billed and retained in violation of its third-party administrator (TPA) agreements and in breach of its fiduciary duty under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* The parties sometimes refer to those funds as "hidden fees." The bellwether case, *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan,* No. 11–12557, was tried to a conclusion and resulted in a judgment in favor of the plaintiff. BCBSM appealed that judgment and moved to stay the present case, predicting that the outcome of that appeal would determine the fate of the present litigation. The stay was dissolved after the court of appeals affirmed. *See Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan,* 751 F.3d 740 (6th Cir.), *cert. denied,* — U.S. ——, 135 S.Ct. 404, 190 L.Ed.2d 291 (2014). Thereafter, BCBSM moved to dismiss this case based on its statute of limitations defense, and plaintiffs Dykema Excavators, Inc. and the Dykema Excavators, Inc. Welfare Benefits Plan moved for partial summary judgment. After hearing oral argument on November 17, 2014, the Court now concludes that the plaintiffs' claims are not time-barred, and *Hi-Lex* requires that the plaintiffs be able to recover a portion of the hidden fees they seek. Therefore, the Court will grant the plaintiff's motion for partial summary judgment and deny the defendant's motion to dismiss counts I and II of the amended complaint. However, counts III through IX, which plead preempted state law claims, will be dismissed.

### I.

Plaintiff Dykema is a "self-funded" customer of BCBSM. That means that Dykema pays the medical care costs of its employees from its own revenue (up to a stop-loss limit), instead of purchasing health insurance for them. Dykema signed a contract with BCBSM over ten

years ago, renewed annually, for BCBSM to act as third-party administrator for health care claims. The parties refer to their contract as the Administrative Services Contract (ASC). Under the ASC, BCBSM receives, processes, and pays health care claims from Dykema's employees; provides Dykema with stop-loss insurance coverage; and allows Dykema's employees access to BCBSM's provider networks and their discounted rates. BCBSM submitted regular statements to Dykema stating the amount paid for healthcare and charging various fees authorized by the ASC. Dykema remitted on those statements. Dykema alleges that BCBSM substantially overstated the amounts owing by adding administrative charges that never were disclosed and that it never agreed to pay. BCBSM contends that it disclosed the hidden fees and that Dykema waited too long after it should have known of them to file its lawsuit.

On October 4, 2013, in its motion to stay proceedings in this case pending the outcome of the *Hi–Lex* appeal, BCBSM asserted that proceedings should be stayed because "[a]ny appellate decision in Blue Cross's favor on the issues identified ... will, under *stare decisis,* control this case, and supersede the judgment, because both sets of plaintiffs are similarly situated." Def.'s Mot. to Stay [dkt. # 13] at 6. BCMSM asserted that the plaintiffs in both *Hi–Lex* and this matter were "parties to materially indistinguishable ASC contracts with Blue Cross," and "the ASC (and related contractual documents) [are] indistinguishable from the 2002 ASC that will be at issue in the *Hi–Lex* appeal." *Ibid.* BCBSM maintained that "if the Sixth Circuit finds that the 2002 ASC disclosed the Disputed Fee, *stare decisis* will mandate the same conclusion in this case." *Ibid.*

In its opinion in *Hi–Lex,* the Sixth Circuit summarized the context of the parties' dispute over the fees charged under the administrative service contracts as follows:

The terms under which BCBSM served as the [Hi–Lex] Health Plan's [Third Party Administrator (TPA)] are set forth in two Administrative Services Contracts (ASCs) the parties entered into in 1991 and 2002, respectively. The parties renewed those terms each year from 1991 to 2011 by executing a "Schedule A" document.

Under the ASCs, BCBSM agreed to process healthcare claims for Hi–Lex's employees and grant those employees access to BCBSM's provider networks. In exchange for its services, BCBSM received compensation in the form of an "administrative fee"—an amount set forth in the Schedule A on a per employee, per month basis.

In 1993, BCBSM implemented a new system whereby it would retain additional revenue by adding certain mark-ups to hospital claims paid by its ASC clients. These fees were charged in addition to the "administrative fee" that BCBSM collected from Hi–Lex under a separate portion of the ASC. Thus, regardless of the amount BCBSM was required to pay a hospital for a given service, it reported a higher amount that was then paid by the self-insured client. The difference between the amount billed to the client and the amount paid to the hospital was retained by BCBSM. This new system was termed "Retention Reallocation."

The fees involved in this new system have been termed "Disputed Fees" by the district court. They include:

A.  Charges for access to the Blue Cross participating provider and hospital network (Provider Network Fee);

B. Contribution to the Blue Cross contingency reserve (contingency/risk fee);

C. Other Than Group subsidy (OTG fee); and

D. A retiree surcharge.

*Hi–Lex*, 751 F.3d at 743. The Sixth Circuit observed regarding the proceedings below that

> [t]he district court dismissed the [plaintiffs'] state law claims as preempted, but granted Hi–Lex summary judgment on its claim that BCBSM functioned as an ERISA fiduciary and that BCBSM had violated ERISA by self-dealing. Furthermore, after a nine-day bench trial, the district court ruled that BCBSM had violated its general fiduciary duty under § 1104(a) and that Hi–Lex's claims were not time-barred. The court awarded Hi–Lex $5,111,431 in damages and prejudgment interest in the amount of $914,241.

*Ibid.*

In their amended complaint, the plaintiffs allege that Blue Cross charged them the same four types of undisclosed fees under their service contract as those that the Sixth Circuit found the defendant liable for in *Hi–Lex*, denominating them, as noted above, as "hidden fees." According to the plaintiffs, those fees secretly were added to the disclosed "Administrative Service Fee" that was specified in the Schedule A documents, which were executed annually. Dykema asserts that the "Hidden Fees" were not disclosed in any of the periodic statements, reporting forms, or settlement reports that Blue Cross supplied to the plaintiffs, but instead were buried within the number reported as "Amounts Billed" by health care providers, rather than itemized in areas reserved for reporting "costs" or "fees." The parties do not appear to dispute that the claims relating to these four specific categories of hidden fees are factually and legally congruent in all material respects to the claims discussed in *Hi–Lex*. However, BCBSM takes issue with the date on which the plaintiffs say they first were presented with a full disclosure of the amount and nature of the hidden fees in a document called the "Value of Blue" report that Blue Cross began delivering to customers in 2007.

Dykema also makes an additional claim in this case. It contends that while the *Hi–Lex* litigation was pending, it learned of a similar "fee retention" scheme carried out by BCBSM that involved burying undisclosed overcharges within the listings of payments made to doctors, under the auspices of a "Physician Group Incentive Program" (PGIP). According to the plaintiffs, under the PGIP, BCBSM reported that it paid higher amounts to doctors than it actually paid, then kept the difference. The plaintiffs allege that the PGIP scheme is nearly identical to the other hidden fees scheme, and BCBSM has not explained how it used the overcharged funds.

The plaintiffs filed their complaint in this case on May 15, 2013. On October 29, 2013, the Court granted BCBSM's motion to stay pending the outcome of the *Hi–Lex* appeal. After the Sixth Circuit affirmed in *Hi–Lex*, the Court dissolved the stay and reopened the case, and the plaintiff filed its amended complaint on June 10, 2014. BCBSM filed its motion to dismiss on June 17, 2014 based on its statute of limitations affirmative defense. Discovery closed on December 12, 2014. The plaintiffs filed their motion for partial summary judgment on August 5, 2014, seeking judgment as a matter of law on their claims for ERISA breach of fiduciary duty (Count I) and self-dealing (Count II), as to the four categories of fees they refer to as hidden fees, but not as to the PGIP fees.

## II.  Motion to dismiss

### A.  Statute of limitations

▮▮▮ BCBSM has filed its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). "A motion to dismiss based on the expiration of the statute of limitations is analyzed under Rule 12(b)(6)." *Moseke v. Miller & Smith, Inc.*, 202 F.Supp.2d 492, 501 (E.D.Va.2002). "Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted 'when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief.'" *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003) (quoting *Ott v. Midland–Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975)); *see also Berry v. Chrysler Corp.*, 150 F.2d 1002, 1003 (6th Cir.1945) (stating that "[t]he defense of the statute of limitations is covered by [Rule 12(b) ](6), and therefore is properly raised by motion"). "What that means in the statute of limitations context is that dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999).

▮▮▮ "Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims." *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir.2003) (citing *Board of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487–88, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980)). To avoid a statute of limitations bar, a plaintiff must commence its action within a prescribed time frame measured from the date the claim accrues. *See Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 590 (6th Cir.2001). A statute of limitations claim therefore has three variables: the date the claim accrues; the date the action is commenced; and the permissible period of delay between those two events.

▮▮▮ The ERISA statute of limitations "requires that a claim be brought within three years of the date the plaintiff first obtained 'actual knowledge' of the breach or violation forming the basis for the claim." *Hi–Lex*, 751 F.3d at 747 (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 548 (6th Cir.2012)) (quotation marks omitted). "'Actual knowledge' means 'knowledge of the underlying conduct giving rise to the alleged violation,' rather than 'knowledge that the underlying conduct violates ERISA.'" *Ibid.* (quoting *Cataldo*, 676 F.3d at 548). "However, the statute provides an exception for a case involving 'fraud or concealment,' extending the filing period to a date no later than six years after the time of discovery of the violation." *Ibid.* (citing 29 U.S.C. § 1113).

BCBSM contends that the plaintiffs' claims are untimely because the plaintiffs had actual knowledge of the hidden fees no later than June 1, 2006, when they executed the Schedule A for that year, which stated that "[a] portion of your hospital savings has been retained by BCBSM to cover [certain costs and fees associated with its provider network]." According to BCBSM, the Sixth Circuit's decision in *Hi–Lex* is "not controlling" on the question whether this language gave the plaintiffs actual knowledge of the fees, because the court of appeals observed in a footnote that this language "could have" given the plaintiffs actual knowledge of the "Disputed Fees," and the panel did not resolve the question whether or not it did, because in *Hi–Lex* the complaint had been filed within six years of the 2006 Schedule A disclosure. Footnote 10, to which BCBSM anchors its argument, reads: "Language in a Schedule A from 2006 did note that '[a] portion of [Hi–Lex's] hospital savings has been retained by BCBSM' to cover provid-

er network costs. However, even assuming that language provided actual knowledge to Hi–Lex, it did so within the 6–year statute of limitations period under ERISA's 'fraud or concealment' exception." *Hi–Lex,* 751 F.3d at 748 n. 10.

Dykema has two responses. First, it argue that the trial court in *Hi–Lex* conclusively determined that the language of the 2006 Schedule A was not sufficient to provide the plaintiffs there with actual knowledge, and that therefore the same language in the Schedule A at issue in this case also was not adequate. Second, it says that none of that matters anyway, because its claims were filed less than two years after the Sixth Circuit's decision denying class action certification in *Pipefitters· Local 636 Insurance Fund v. Blue Cross & Blue Shield of Michigan,* 654 F.3d 618 (6th Cir.2011), which the Sixth Circuit referred to as involving "the same claims" as *Hi–Lex, see Hi–Lex,* 751 F.3d at 751, and the period of limitations was tolled up to that point. To the second argument, BCBSM responds that "class action tolling" does not apply because the limitations period under ERISA is a statute of repose, not a statute of limitations, to which tolling is inapplicable. BCBSM also believes that class action tolling is not appropriate because the present case involves claims based on fees that were not in dispute in the *Pipefitters* case, and the *Pipefitters* plaintiffs did not allege that fees were concealed, but only that they were improperly assessed, even if they were fully disclosed.

### 1. Class action tolling

#### a. Statutes of "limitation" vs. "repose"

▮ Whether class action tolling applies depends in part on whether 29 U.S.C. § 1113 is read as a statute of limitations or a statute of repose. Statutes of limitations can be tolled; statutes of repose cannot. *CTS Corp. v. Waldburger,* —— U.S. ——,

134 S.Ct. 2175, 2183, 189 L.Ed.2d 62 (2014).

The Supreme Court summarized the features of both in *CTS Corp.* A statute of limitations establishes a deadline for commencing a civil action measured from the date the claim accrued. *Id.* at 2182. A claim accrues when "the plaintiff can file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.,* 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997). A variant allows a plaintiff time to discover his claim, that is, when the claim "becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." *CTS Corp.,* 134 S.Ct. at 2182 (citation omitted). A statute of repose does not focus on the injured party; instead it measures time from a culpable act of the putative defendant. *Ibid.* It establishes "a· cutoff," which is "in essence an 'absolute ... bar' on a defendant's temporal liability." *Id.* at 2183 (citations omitted). A statute of repose can bar a lawsuit even if the claim did not arise until after the period of repose expired. *Ibid.*

The *CTS Corp.* Court advised that to distinguish one from the other, it is necessary to look to the text of the statute and determine the purpose and effect of the specific limitation period imposed. As the Court explained in making this distinction, "statutes of limitations ... generally begin to run after a cause of action accrues and so always limit the time in which a civil action 'may be brought,'" but a "statute of repose ... may preclude an alleged tortfeasor's liability before a plaintiff is entitled to sue, before an actionable harm ever occurs." *Id.* at 2187.

The statute establishing filing deadlines under ERISA, as it applies to the claims for breach of fiduciary duty and self-deal-

ing at issue in this case and in *Hi–Lex,* states:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Although the language in subsection (1) reads like a statute of repose, it is evident from a straightforward application of the Supreme Court's reasoning in *CTS* that the "fraud or concealment" limitations period under subsection (2) is a "statute of limitation."

Several courts have described section 1113 as a "statute of repose," but in each of those cases the courts considered only the "baseline" rule imposing a period of six years after "the date of the last action which constituted a part of the breach or violation." Those courts did not distinguish the separate provision that establish a limitation period of "six years after the date of discovery of the violation" in cases of "fraud or concealment." *See Keiran v. Home Capital, Inc.,* 720 F.3d 721, 732 (8th Cir.2013); *David v. Alphin,* 704 F.3d 327, 339 (4th Cir.2013); *Ranke v. Sanofi–Synthelabo Inc.,* 436 F.3d 197, 205 (3d Cir. 2006); *Radford v. Gen. Dynamics Corp.,* 151 F.3d 396, 400 (5th Cir.1998).

It is apparent from the plain text that section 1113 imposes a period of "repose" and two separate periods of "limitation," which apply to three different categories of cases. As the district court explained in *Arivella v. Lucent Tech.,* 623 F.Supp.2d 164 (D.Mass.2009), these prescriptive periods are distinct and must be considered separately:

> Sections 413(1) and 413(2) present different types of durational limitations. Section 413(1), a prototypical "statute of repose," refers exclusively to the conduct of the defendant and demarcates a fixed period of time within which a plaintiff can file a complaint. *See* Black's Law Dictionary 1423 (7th Ed.1999) (defining a "statute of repose" as "[a] statute that bars a suit a fixed number of years after the defendant acts in some way ..., even if this period ends before the plaintiff has suffered an injury"). In contrast, section 413(2) is a standard "statute of limitations," requiring that a plaintiff file suit within a certain period of time after he or she becomes aware of an injury suffered. *Id.* at 1422 (defining "statute of limitations" as "[a] statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)").

*Arivella,* 623 F.Supp.2d at 173; *see also Hi–Lex,* 751 F.3d at 750 ("The claims in this case did not violate ERISA's *statute of limitations* because *Hi–Lex* can validly invoke the extended six-year period permitted by the fraud or concealment exception.") (emphasis added.); *Caputo v. Pfizer, Inc.,* 267 F.3d 181, 188 (2d Cir.2001) (referring to the ERISA statute of limitations as "[h]eld together by chewing gum and baling wire," and separately analyzing the limitations period under the "exception clause").

The *Arivella* court correctly analyzed the statutory text: section 1113 is *both* a statute of repose *and* a statute of limitations. First, subsection (1) (stating that "[n]o action may be commenced" more than "six years after ... the date of the last action which constituted a part of the breach or violation") must be viewed as a "statute of repose" under the analysis set forth in *CTS*, because the reference point for the commencement of the period is based solely upon the date of the defendant's conduct, with no reference at all to accrual of a cause of action. Subsection (1) therefore "effect[s] a legislative judgment that a defendant should 'be free from liability after the legislatively determined period of time,'" *CTS Corp.*, 134 S.Ct. at 2183. It is apparent that by its plain terms it "may preclude an alleged tortfeasor's liability before a plaintiff is entitled to sue, before an actionable harm ever occurs." *Id.* at 2187.

■ Second, the "exception clause" tacked onto the statute's heel (stating that "in the case of fraud or concealment, [an] action may be commenced not later than six years after the date of discovery of such breach or violation") must be viewed as a statute of limitations because it measures time from a plaintiff's "discovery" of a claim, that is, when the plaintiff's claim accrues. Under subsection 2, it is textually and logically impossible for the six-year period to commence before a plaintiff has "discovered" its cause of action. Therefore, there is no possibility that this provision could "preclude an alleged tortfeasor's liability before a plaintiff is entitled to sue," or "before an actionable harm ever occurs." The "exception clause" in section 1113 therefore is a classic statute of limitations, because it "creates 'a time limit for suing in a civil case, based on the date when the claim accrued,'" which in this case is defined as "when the injury ... was discovered." *CTS Corp.*, 134 S.Ct. at 2182.

Because the limitation period under the "exception clause" of section 1113 is a "statute of limitation," it is subject to tolling where the "restriction imposed by the statute of limitations does not further the statute's purpose." *CTS Corp.*, 134 S.Ct. at 2183.

### b. *American Pipe* rule

■. A statute of limitations is tolled when a claimant files an action within the limitations period. It is also tolled when a similarly-situated plaintiff files an action within that period on behalf of a putative class. "[T]he Supreme Court has held that 'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.'" *In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474, 478 (6th Cir.2013) (quoting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)). "Although that case addressed intervention motions, the Supreme Court subsequently extended the doctrine, holding that 'all members of the putative class [may] file individual actions in the event that class certification is denied, provided ... that those actions are instituted within the time that remains on the limitations period.'" *Ibid.* (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 346–47, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)). "As expressed in that case, *American Pipe* tolling extends to all putative class members, whether seeking to intervene or to initiate their own suit, in order to give full effect to the efficiency and economy goals of class action procedure." *Ibid.*

■ The rule has limits, however. It "should not be read ... as leaving a plaintiff free to raise different or peripheral claims following denial of class status." *Crown*, 462 U.S. at 354, 103 S.Ct. 2392

(Powell, J., concurring). Consequently, the new lawsuit must "raise[ ] claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced.'" *Id.* at 355, 103 S.Ct. 2392 (Powell, J., concurring) (citations omitted).

### c. *Pipefitters v. BCBSM*

On September 1, 2004, Trustees of the Pipefitters Local 636 Insurance Fund and others filed a putative class action against BCBSM alleging that the defendant breached its fiduciary duties under ERISA when it charged their self-funded benefits plans the OTG fees. *Pipefitters v. BCBSM*, No. 04–73400 (E.D.Mich.). That case "involve[d] the same ASC, same defendant, and same allegations" as in the *Hi–Lex* litigation, *Hi–Lex*, 751 F.3d at 740, and, by extension, this case. Dykema argues that the *Pipefitters* action tolled the statute of limitations in this case, and that it remained tolled until August 12, 2011, when the court of appeals reversed the class certification ruling. *See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618 (6th Cir. 2011).

BCBSM argues that there is no "complete identity" between the claims in this case and the claims in *Pipefitters*, because (1) *Pipefitters* did not involve allegations of "hidden" fees but only fees that were improperly and arbitrarily imposed, even if fully disclosed; and (2) the present case involves other specific fees in addition to the "OTG" fees at issue in *Pipefitters*. That position, like BCBSM's other arguments in support of its motion to dismiss, is impossible to square with the position it took in its motion to stay this case pending the outcome in *Hi–Lex*, which was that (1) "[a]ny appellate decision … on the issues identified [in *Hi–Lex*] … [would], under *stare decisis*, control this case, and supersede the judgment, because both sets of

plaintiffs are similarly situated"; (2) "the ASC (and related contractual documents) [are] indistinguishable from the 2002 ASC that will be at issue in the *Hi–Lex* appeal"; and (3) the Sixth Circuit's conclusions as to "the Disputed Fees [would] mandate the same conclusion in this case."

Moreover, BCBSM's position contradicts the plain holding of the Sixth Circuit that the defendant was liable in *Hi–Lex* because the claims there were factually and legally indistinguishable from those at issue in *Pipefitters*, which the Sixth Circuit found to be "determinative" and "controlling." *Hi–Lex*, 751 F.3d at 751 ("Our analysis of the § 1104(a) claim in *Pipefitters IV* is … determinative for this case"; "There, as here, when a 'fiduciary uses a plan's funds for its own purposes, … such a fiduciary is liable under § 1104(a)(1) and § 1106(b)(1).'") (citing *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 722 F.3d 861, 867–69 (6th Cir. 2013)); *id.* at 750 ("Because this case involves the same ASC, same defendant, and same allegations, our decision in *Pipefitters IV* controls with respect to the § 1106(b)(1) claim.") (citing *Pipefitters*, 722 F.3d at 868 (holding that BCBSM's use of fees it discretionarily charged "for its own account" is "exactly the sort of self-dealing that ERISA prohibits fiduciaries from engaging in")). If Dykema is "similarly situated" to the plaintiff in *Hi–Lex* and all of the operative material facts between the two cases are "indistinguishable," and if *Hi–Lex* involves "the same ASC, same defendant, and same allegations" as *Pipefitters*, then by simple operation of the transitive property there must be complete identity between the claims in the present action and those in *Pipefitters*.

BCBSM contends that the *American Pipe* rule cannot apply here because class certification in *Pipefitters* was denied. Moreover, BCBSM observes that if the

rule was given full effect, Dykema (and others, presumably) would have until August 2017 to file their actions against it based on ASCs that were signed over a decade ago. As to the second point, the Court agrees with the defendant's arithmetic. However, there is no inequity, since BCBSM has been on notice of these potential claims for several years, and the lengthy period of limitations resulted from its own conduct: "BCBSM breached its fiduciary duty by committing fraud and then acting to conceal that fraud." *Hi–Lex*, 751 F.3d at 748.

On the first point, BCBSM cites *Armstrong v. Martin Marietta*, 138 F.3d 1374 (11th Cir.1998), in support, although it is not clear why, since the case is readily distinguishable. In *Armstrong* the district court dismissed certain parties (not claims) after granting class certification to a narrower class than was proposed (i.e., after denying class certification to the dismissed plaintiffs). The Eleventh Circuit held that class action tolling ended and the limitations period began to run again as to the excluded plaintiffs immediately upon entry of the district court's interlocutory order denying class certification.

In *Pipefitters*, by contrast, the district court initially did not address the motion for class certification filed with the complaint, but instead dismissed the complaint on the merits in response to the defendant's Rule 12(b)(6) motion. The plaintiffs timely appealed the dismissal of their claims, and ultimately the Sixth Circuit reversed and remanded. On remand, the district court then granted the motion to certify class, and then that order was appealed by the defendants. Class certification never was denied in *Pipefitters* until the Sixth Circuit reversed the grant of class certification in 2011. *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 632 (6th Cir.2011). That was the mirror-image of

the history in *Armstrong*, where the district court denied class certification (as to certain excluded plaintiffs) in the first instance, but allowed other parties to proceed as part of a narrower class on the original claims raised in the complaint.

The *Armstrong* court did not hold that a judgment of dismissal on the merits that is the subject of a timely appeal ends class action tolling where the district court never addressed the class certification motion, and where the dismissal eventually is reversed. Rather, it stands for the rule that "the pendency of a class action tolls the applicable statute of limitations only until the district court makes a class certification decision," and "[i]f class certification is denied in whole or in part, the statute of limitations begins to run again as to those putative class members who were excluded from the class." *Armstrong*, 138 F.3d at 1391. That case stands for the proposition that tolling ceases when class certification is denied. Here, tolling ceased, and the statute of limitations began to run again, when the Sixth Circuit essentially decertified the class by reversing the district court's certification order in August 2011.

Because the class action complaint in *Pipefitters* was filed on September 1, 2004, and BCBSM does not suggest any date on which Dykema's claims could have accrued earlier than June 1, 2006, the limitations period under section 1113 therefore was tolled in full until the Sixth Circuit reversed the trial court's grant of class certification on August 12, 2011. Therefore, Dykema was allowed to "file individual actions [after] class certification [was] denied, provided ... that those actions [were] instituted within the time that remains on the limitations period." The plaintiffs' complaint filed on May 15, 2013 was timely because it was filed less than two years after the Sixth Circuit's August 12, 2011 denial of class certification in *Pi-*

*pefitters,* well within the six year period allowed under the "fraud or concealment" exception clause under 29 U.S.C. § 1113.

With this conclusion, it is unnecessary to address the arguments dealing with the plaintiffs' actual knowledge of the hidden fees before June 1, 2006 as a result of language in the Schedule A document they executed (the *Hi–Lex* footnote 10 argument) and whether the "Value of Blue" report that Blue Cross furnished provided notice sometime in 2007.

### 2. PGIP fees claim

BCBSM contends that the complaint fails to state a plausible claim as to the alleged PGIP fees. "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal,* [556 U.S. 662, 678] 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." *Fabian v. Fulmer Helmets, Inc.,* 628 F.3d 278, 280 (6th Cir.2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

▮ BCBSM believes that the amended complaint is deficient because the plaintiffs assert only that BCBSM "has not otherwise explained how it used" the funds; and it does not offer any specific facts to show that those funds were used other than for the benefit of the plan, in keeping with BCBSM's fiduciary duty. Dykema responds that the claims based on the PGIP fees are substantiated by more than three pages of specific allegations in the complaint, and that the discovery they have received has confirmed that BCBSM did not, as they allege, properly disclose the fees to them, but instead "buried them" within the amounts reported as "professional claims" or "claims paid."

The complaint contains no allegations as to the precise purpose to which the PGIP fees were put by the defendant, but it contains sufficient facts to identify the specific nature of the fees withheld and the provisions of the plan or BCBSM's policies regarding administration of the plan to identify the fees at issue. As to the substance of the alleged breach of fiduciary duty and self-dealing, the complaint plainly alleges that the "PGIP scheme" was carried out in a manner identical to that applied to the "Hidden Fees," with the only difference being that the PGIP fees involved overstated payments to doctors rather than to other health care providers such as hospitals, and that the putative premise for the overstated payment amounts was BCBSM's policy of providing "physician incentives" rather than "network access" or "retiree surcharges," or "contingency and risk fees." Other than as to the denomination of the PGIP fees and the specific providers to whom BCBSM allegedly paid less than it reported to the plaintiffs, it is evident that the claims related to PGIP fees are identical in all material respects to the claims for "Hidden Fees" for which the defendant already has been held liable, and the complaint therefore states valid claims for relief under ERISA as to the PGIP Fees.

### 3. State law claims

▮ The amended complaint, like the other form pleadings filed in the various related matters, asserts a number of miscellaneous state law claims premised upon: (1) violation of the Michigan Nonprofit Health Care Corporation Reform Act, Mich. Comp. Laws § 550.1211 (Count III); (2) violation of the Michigan Health Care

False Claims Act, Mich. Comp. Laws § 752.1009 (Count IV); (3) breach of contract and breach of covenant of good faith and fair dealing (Count V); (4) breach of common law fiduciary duty (Count VI); (5) conversion (Count VII); (6) and fraud (Counts VIII and IX). As an initial matter, these claims are subject to dismissal because the plaintiffs do not address or even mention them in their response to the motion to dismiss, and it appears that they therefore have abandoned them and now intend to make no effort to proceed upon them. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," and "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (quotations and alterations omitted).

■ Moreover, as the district court found in *Hi–Lex*, these claims "arise out of the same operative facts as the ERISA claims," and "seek relief for the same conduct through 'alternative enforcement mechanisms.'" *Hi–Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, No. 11–12557, 2012 WL 3887438, at *10 (E.D.Mich. Sept. 7, 2012) (summarily dismissing identical set of state law claims as preempted by ERISA). It is plain that these claims relate to the plan and that the state laws cited by the plaintiffs, so far as they seek to invoke them, purport to "(1) mandate employee benefit structures or their administration; (2) provide alternative enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 419 (6th Cir.2014) (citation omitted). All of these claims therefore are preempted and must be dismissed. *Ibid.; see also Pilot Life*

*Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (common law claims for fraud, breach of contract, and breach of fiduciary duty preempted); *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 801 (6th Cir.2012) (breach of contract and breach of fiduciary duty claims preempted).

### B. Summary judgment motion

■ The plaintiffs argue that they are entitled to summary judgment on their claim for breach of fiduciary duty as to the hidden fees based on the controlling decision in *Hi–Lex* holding the defendant liable for the same fees under factually indistinguishable circumstances. The plaintiffs argue likewise that they are entitled to judgment as a matter of law on their claim for self-dealing as to the same fees, because the Sixth Circuit found the defendant liable under the same circumstances on the same claim in *Hi–Lex*.

■ Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Dykema's claims for breach of fiduciary duty and self dealing are identical to those claims that were litigated and determined adversely to BCBSM in *Hi–Lex*. The doctrine of "[c]ollateral estoppel, otherwise termed issue preclusion, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Arkansas Coals, Inc. v. Lawson*, 739 F.3d 309, 320 (6th Cir.2014) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008)). "There are four requirements for issue preclusion to apply: (1) the precise issue must have been raised and actually litigated in the prior proceed-

ings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Id.* at 320–21 (citing *Georgia–Pacific Consumer Products LP v. Four–U–Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012)). All four elements are satisfied here.

As the court of appeals explained, "when a 'fiduciary uses a plan's funds for its own purposes, . . . such a fiduciary is liable under § 1104(a)(1) and § 1106(b)(1).' " *Hi–Lex*, 751 F.3d at 751 (citing *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 722 F.3d 861, 867–69 (6th Cir.2013)). The plaintiffs are entitled to judgment as a matter of law on their hidden fees claims in this case because, as in *Hi–Lex*, BCBSM's conduct in charging and concealing the hidden fees breached its fiduciary duty established by ERISA and amounted to impermissible self-dealing. *Id.* at 750 ("Because this case involves the same ASC, same defendant, and same allegations, our decision in *Pipefitters IV* controls with respect to the § 1106(b)(1) claim.") (citing *Pipefitters*, 722 F.3d at 868 (holding that BCBSM's use of fees it discretionarily charged "for its own account" is "exactly the sort of self-dealing that ERISA prohibits fiduciaries from engaging in")).

### III.

The plaintiffs' complaint was filed within ERISA's statute of limitations because it was filed less than two years after the Sixth Circuit's August 12, 2011 denial of class certification in *Pipefitters*, well within the six year period allowed under the "fraud or concealment" exception clause under 29 U.S.C. § 1113. The amended complaint adequately states a claim for recovery of the PGIP fees. However, the plaintiffs' state law claims are preempted by ERISA. The plaintiffs are entitled to summary judgment on counts I and II of the amended complaint as to the hidden fees, but not the PGIP fees.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. #.21] is **GRANTED IN PART AND DENIED IN PART.** Counts III through IX of the amended complaint are **DISMISSED WITH PREJUDICE.** The motion is **DENIED** in all other respects.

It is further **ORDERED** that the plaintiffs' motion for partial summary judgment [dkt. # 28] is **GRANTED.**